Sandra SOLOMON, Plaintiff–
Appellant,

v.

KIMBERLY–CLARK CORPORATION,
Defendant–Appellee.

No. 00–1033.

United States Court of Appeals,
Federal Circuit.

June 30, 2000.

Jeffrey L. Weiss, Harry M. Weiss & Associates, P.C., of Scottsdale, AZ, argued for plaintiff-appellant. Of counsel was Harry M. Weiss.

William H. Baumgartner, Jr., Sidley & Austin, of Chicago, IL, argued for defendant-appellee. With him on the brief were V. Bryan Medlock, Jr., Sidley & Austin, of Dallas, TX; and Joseph S. Miller, Sidley & Austin, of Washington, DC. Of counsel were Carter G. Phillips; and Harry M. Beggs, Carson Messinger, of Phoenix, AZ.

Before LOURIE, CLEVENGER, and BRYSON, Circuit Judges.

LOURIE, Circuit Judge.

Sandra Solomon appeals from the decision of the United States District Court for the District of Arizona granting Kimberly–Clark Corporation's motion for summary judgment that the claims of U.S. Patent 4,560,381 are invalid as indefinite under 35 U.S.C. § 112, ¶ 2. *See Solomon v. Kimberly–Clark Corp.*, No. CIV 96–2000 PHX RCB (D.Ariz. Sept. 2, 1999) ("*Solomon II* "). Because the district court erred in holding the claims invalid under that provision of the statute, we reverse.

## BACKGROUND

### A. The Claimed Invention

Sandra Southwell (now Sandra Solomon) is the named inventor on the '381 patent, which is directed to disposable panties and panty liners for use during a woman's menstrual cycle. Independent claim 1, which is representative of the claims at issue, reads as follows:

1. A disposable woman's protective menstrual panty for holding a feminine napkin comprising:

 a relatively thick layer of disposable absorbent material; and

 a depression means in said relatively thick layer of disposable absorbent material, said depression means including a substantially thinner layer of disposable absorbent material oper-

ably disposed longitudially [sic] in the crotch area of said panty and extending at least partially upward thereof in both front and rear areas, said depression means being dimensioned for receiving said feminine napkin therein for positioning same during use.

'381 patent, col. 17, l. 65 to col. 18, l. 9. Figures 1 and 2 of the '381 patent, which have been modified for clarity, depict the preferred embodiment of the claimed invention in the following manner:

FIG. 1

FIG. 2

As illustrated by the figures, panty 21 is divided into body portion 22, waist portion 23, crotch portion 24, and leg portions 25. *See id.* at col. 5, ll. 58–60. Body portion 22 is itself divided at division line 28 into top portion 26 and bottom portion 27. See id. at col. 5, ll. 60–62. Top portion 26 is preferably made of lightweight open mesh-type material or fabric, and the outer surface of bottom portion 27 may be made of the same or different material, *e.g.,* a woven, hydrophobic material. *See id.* at col. 5, l. 62 to col. 6, l. 27. The inner surface of bottom portion 27, however, is composed of a highly absorbent, thick layer 51. *See id.* at col. 6, ll. 37–43. Crotch portion 24 of lower portion 27 contains an elongated, oval-shaped depression 43 that is bounded on both sides by thick layer 51 (specifically labeled 44 in the crotch region) and con-

tains a relatively thin layer of absorbent material at its base. See id. at col. 7, ll. 40–65. The depression functions to receive and to hold a commercially available feminine napkin or pad. See id. at col. 8, ll. 48–60.

### B. *Procedural History*

Solomon sued Kimberly–Clark, alleging that its Personals® panty infringed all fifty-nine claims of the '381 patent.[1] The district court granted Kimberly–Clark's motion for summary judgment of noninfringement, holding that the Personals® panty did not infringe the claims of the patent either literally or under the doctrine of equivalents. On appeal, we upheld the district court's claim construction, as well as its conclusion that there was no genuine issue of material fact that the

---

1. Because the details of Kimberly–Clark's product are not relevant to the issues present-

ed on appeal, we do not discuss them here.

accused panties did not literally infringe. *See Solomon v. Kimberly–Clark Corp.*, No. 97–1571, 1998 WL 279346, at *2–*5 (Fed. Cir. May 26, 1998) ("*Solomon I* "). However, we vacated the judgment and remanded for further proceedings in view of our conclusion that genuine issues of material fact existed regarding infringement under the doctrine of equivalents. See id. at *4–*7.

On remand, Kimberly–Clark again moved for summary judgment, alleging that the patent was invalid under 35 U.S.C. § 102(f)[2] because Solomon was not the true inventor of the claimed invention, or alternatively under 35 U.S.C. 112, ¶ 2,[3] because Solomon failed to claim the subject matter that she regarded as her invention. *See Solomon II*, slip op. at 4. Kimberly–Clark based its allegations in part on Solomon's deposition testimony, in which she allegedly stated on several occasions that the depression limitation in the claimed invention was made of material having a uniform, rather than varying, thickness. See id. at 3. Kimberly–Clark contended that those statements were contrary to what was claimed in the patent, apparently based on our (and the district court's) construction of "depression" to mean a portion of the panty "formed by surrounding a region of substantially thinner material with a region of thicker material." *Solomon I*, 1998 WL 279346, at *2. Kimberly–Clark also based its arguments on Solomon's DX13 prototype of the claimed invention, which depicts an area of uniform thickness in the region where the depression is located. *See Solomon II*, slip op. at 3–4.

The district court held that Kimberly–Clark had not proven that the claims of the patent were invalid under section 102(f), because Kimberly–Clark failed to name the "true inventor" on the patent. *See id.* at 9–10. The court reasoned that even if it were legally correct to invalidate patent claims under section 102(f) in the absence of proof of the identity of the true inventor, Kimberly–Clark had nonetheless failed to prove by clear and convincing evidence that Solomon was not the true inventor. *See id.* The district court concluded, however, that Solomon's deposition testimony revealed that "her patent does not accurately depict her invention" and thus held that there was no genuine issue of material fact that the patent was invalid under section 112, paragraph 2, for failure to claim "the subject matter which the applicant regards as his invention." *Id.* at 13–14. While acknowledging that this case did not involve a "typical" validity challenge under section 112, paragraph 2, the district court noted that it could "see little reason to ignore the mandate of § 112 in such a case." *Id.* at 14. The court also held that Solomon's affidavit attesting to her inventorship was insufficient to prevent summary judgment on that issue. *See id.* at 14–16.

Solomon appealed the district court's invalidity ruling to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

### A. *Standard of Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

2. Section 102(f) provides that:
 A person shall be entitled to a patent unless—
 * * * * * *
 (f) he did not himself invent the subject matter sought to be patented. . . .
 35 U.S.C. § 102(f) (1994).

3. Section 112, ¶ 2, provides that:
 The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.
 35 U.S.C. § 112, ¶ 2 (1994).

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review the grant of a motion for summary judgment de novo, reapplying the summary judgment standard. *See Kemco Sales, Inc. v. Control Papers Co.,* 208 F.3d 1352, 1359, 54 USPQ2d 1308, 1312 (Fed.Cir.2000).

■ The determination whether a claim recites "the subject matter which the applicant regards as his invention," like a determination whether a claim is sufficiently definite, "is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *See Personalized Media Communications, LLC v. ITC,* 161 F.3d 696, 705, 48 USPQ2d 1880, 1888 (Fed.Cir.1998) (setting forth this reasoning in the context of definiteness). Thus, as with claim construction, a determination under either portion of section 112, paragraph 2, is a question of law that we review de novo. *See Atmel Corp. v. Information Storage Devices, Inc.,* 198 F.3d 1374, 1378, 53 USPQ2d 1225, 1227 (Fed.Cir.1999) (setting forth this standard in the context of definiteness).

B. *Invalidity under Section 112, Paragraph 2*

Solomon argues that the district court erred in invalidating the claims of the '381 patent under section 112, paragraph 2, asserting that a court evaluates compliance with that provision by comparing the claims to the disclosure in the specification, not by comparing the claims to an inventor's deposition testimony. Solomon alternatively contends that even if the testimony and other evidence are considered,

Kimberly–Clark has still failed to prove invalidity by clear and convincing evidence. Solomon also asserts that Kimberly–Clark's evidence and arguments really relate to inventorship, not definiteness, and such a challenge should have been raised under section 102(f). Kimberly–Clark responds that the language of section 112, paragraph 2, plainly states that patent claims must specify what "the applicant regards as his invention," and that therefore claims may be invalid if inventor testimony conflicts with the recitations of the claims. Kimberly–Clark further contends that based on the evidence it presented, it did succeed in proving that the claims of the '381 patent are invalid under section 112, paragraph 2.

■ We agree with Solomon that the district court erred in invalidating the claims of the '381 patent under section 112, paragraph 2, based on Solomon's deposition testimony. As an initial matter, we note that for a claim to comply with section 112, paragraph 2, it must satisfy two requirements: first, it must set forth what "the applicant regards as his invention," and second, it must do so with sufficient particularity and distinctness, *i.e.,* the claim must be sufficiently "definite." *See* 35 U .S.C. § 112, ¶ 2; see also Irah H. Donner, *Patent Prosecution* ch. 9.VIII, at 933 (2d ed.1999).

■ During the prosecution of a patent application, a claim's compliance with both portions of section 112, paragraph 2, may be analyzed by consideration of evidence beyond the patent specification, including an inventor's statements to the Patent and Trademark Office ("PTO"). *See In re Conley,* 490 F.2d 972, 976, 180 USPQ 454, 456–57 (CCPA 1974) (noting that the phrase "which the applicant regards as his invention" in the second portion of section 112, paragraph 2, "has been relied upon in cases where some material submitted by applicant, *other than his specification,*

shows that a claim does not correspond in scope with what *he regards* as his invention."); *In re Moore*, 58 C.C.P.A. 1042, 439 F.2d 1232, 1235, 169 USPQ 236, 238 (CCPA 1971) ("[T]he definiteness of the language employed must be analyzed-not in a vacuum, but always in light of the teachings of the prior art and of the particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art.").

 It is not inappropriate for the PTO or a reviewing tribunal to consider such evidence extrinsic to the patent application in light of the goals of the examination process and the fact that pending claims can be freely amended to comport with those goals. As we explained in *In re Zletz:*

> During patent examination the pending claims must be interpreted as broadly as their terms reasonably allow. When the applicant states the meaning that the claim terms are intended to have, the claims are examined with that meaning, in order to achieve a complete exploration of the applicant's invention and its relation to the prior art. The reason is simply that during patent prosecution when claims can be amended, ambiguities should be recognized, scope and breadth of language explored, and clarification imposed.... An essential purpose of patent examination is to fashion claims that are precise, clear, correct, and unambiguous. Only in this way can uncertainties of claim scope be removed, as much as possible, during the administrative process.

*In re Zletz*, 893 F.2d 319, 321–22, 13 USPQ2d 1320, 1322 (Fed.Cir.1989) (cita-

tion omitted); *see In re Prater*, 56 C.C.P.A. 1381, 415 F.2d 1393, 1404–05, 162 USPQ 541, 550–51 (CCPA 1969). Thus, in the more fluid environment of patent examination, an inventor's statements are relevant to determining compliance with the statute.

 On the other hand, when a court analyzes whether *issued claims* comply with section 112, paragraph 2, the evidence considered in that analysis should be more limited. As for the "definiteness" portion of section 112, paragraph 2, our precedent is well-settled that a court will typically limit its inquiry to the way one of skill in the art would interpret the claims in view of the written description portion of the specification. As we stated in *Personalized Media:*

> Determining whether a claim is definite requires an analysis of whether one skilled in the art would understand the bounds of the claim when read in light of the specification. If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more.

*Personalized Media*, 161 F.3d at 705, 48 USPQ2d at 1888 (internal quotation marks omitted); *see Atmel*, 198 F.3d at 1378, 53 USPQ2d at 1227–28 ("As a general matter, it is well-established that the determination whether a claim is invalid as indefinite depends on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the specification." (internal quotation marks omitted)).[4] Although we have not specifically addressed the types of evidence that may be considered in analyzing whether a

4. *See also, e.g., Beachcombers v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1158, 31 USPQ2d 1653, 1656 (Fed.Cir.1994); *North Am. Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1579, 28 USPQ2d 1333, 1339 (Fed.Cir.1993); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470, 28 USPQ2d 1190, 1194–95 (Fed.Cir.1993); *Miles Lab.,* *Inc. v. Shandon Inc.*, 997 F.2d 870, 875, 27 USPQ2d 1123, 1126 (Fed.Cir.1993); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576, 1 USPQ2d 1081, 1088 (Fed. Cir.1986). Despite this general rule, in some circumstances evidence beyond the claims and written description may be reviewed. *See e.g., Amgen, Inc. v. Chugai Pharm. Co.,*

claim complies with the "which the applicant regards as his invention" portion of that statute, we see no reason for a different standard to apply, as the rationale for reviewing a limited range of evidence under either portion of the statute is the same.

A more limited range of evidence should be considered in evaluating validity as opposed to patentability under either portion of section 112, paragraph 2, because the language of issued claims is generally fixed (subject to the limited possibilities of reissue and reexamination), the claims are no longer construed as broadly as is reasonably possible, and what the patentee subjectively intended his claims to mean is largely irrelevant to the claim's objective meaning and scope, *see Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985–86, 34 USPQ2d 1321, 1334–35 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996). As has been noted in the context of definiteness, the inquiry under section 112, paragraph 2, now focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the patentee's right to exclude. *See United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 233, 63 S.Ct. 165, 87 L.Ed. 232, 55 USPQ 381, 384 (1942) ("To sustain claims so indefinite as not to give the notice required by the statute would be in direct contravention of the public interest which Congress therein recognized and sought to protect."); *see also* 3 Chisum, *supra*, § 8.03, at 8–14. ("The primary purpose of this requirement of definiteness in claims is to provide clear warning to others as to what constitutes infringement of the patent.").

It is particularly inappropriate to consider inventor testimony obtained in the context of litigation in assessing validity under section 112, paragraph 2, in view of the absence of probative value of such testimony. In *Markman*, we addressed the closely related issue of litigation-derived inventor testimony in the context of claim construction, and concluded that such testimony is entitled to little, if any, probative value. *See Markman*, 52 F.3d at 985, 34 USPQ2d at 1332–33 (holding that inventor testimony as to "[t]he subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim (except as documented in the prosecution history)."); *see also Bell & Howell Document Management v. Altek Sys.*, 132 F.3d 701, 706, 45 USPQ2d 1033, 1038 (Fed.Cir. 1997) ("The testimony of an inventor and his attorney concerning claim construction is thus entitled to little or no consideration. The testimony of an inventor is often a self-serving, after-the-fact attempt to state what should have been part of his or her patent application. . . ."); *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1126, 37 USPQ2d 1816, 1826 (Fed.Cir.1996) ("We have previously stated that an inventor's after-the-fact testimony is of little weight compared to the clear import of the patent disclosure itself.") (internal quotation marks omitted); *cf. Voice Techs. Group, Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615–16, 49 USPQ2d 1333, 1340–41 (Fed.Cir.1999) (acknowledging that "the inventor can not by later testimony change the invention and the claims from their meaning at the time the patent was drafted and granted" but stating that the inventor may provide testimony explaining the claimed invention and its development).

927 F.2d 1200, 1217–18, 18 USPQ2d 1016, 1030–31 (Fed.Cir.1991); *Texas Instruments Inc. v. ITC*, 871 F.2d 1054, 1063, 10 USPQ2d 1257, 1263–64 (Fed.Cir.1989). Moreover, we note that the determination of the perspective of one of skill in the art may involve reference to evidence extrinsic to the patent, such as

prior art and witness testimony. *See Orthokinetics*, 806 F.2d at 1576, 1 USPQ2d at 1088 (referencing witness testimony); see generally 3 Donald S. Chisum, *Chisum on Patents* § 7.03[2] (2000) (discussing the "person skilled in the art" standard).

We reasoned that an inventor is not competent to construe patent claims for the following reasons:

> [C]ommonly the claims are drafted by the inventor's patent solicitor and they may even be drafted by the patent examiner in an examiner's amendment (subject to the approval of the inventor's solicitor). While presumably the inventor has approved any changes to the claim scope that have occurred via amendment during the prosecution process, it is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO.

*Markman*, 52 F.3d at 985, 34 USPQ2d at 1335 (citation omitted). We find this analysis equally compelling in the present context, as the determination whether a claim complies with section 112, paragraph 2, is "drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media*, 161 F.3d at 705, 48 USPQ2d at 1888. Although we recognize that "which the applicant regards as his invention" is subjective language, *see* Donner, *supra*, ch. 9.VIII, at 933, once the patent issues, the claims and written description must be viewed objectively, from the standpoint of a person of skill in the art, *see Markman*, 52 F.3d at 986, 34 USPQ2d at 1335.

For the foregoing reasons, we conclude that inventor testimony, obtained in the context of litigation, should not be used to invalidate issued claims under section 112, paragraph 2.[5] Accordingly, we agree with Solomon that the district court erred in using her deposition testimony to invalidate the claims of the '381 patent under

that provision of the statute. We have carefully considered Kimberly–Clark's remaining arguments, but find them unpersuasive.

### C. *Invalidity under Section 102(f)*

Kimberly–Clark alternatively argues that the district court's judgment of invalidity should be affirmed because, contrary to that court's conclusion, the claims are also invalid under section 102(f); it asserts that someone other than Solomon must have conceived the invention claimed by the '381 patent. Kimberly–Clark contends that the claims require a depression formed from material having two different thicknesses, but the panty Solomon invented, as revealed by her deposition testimony and the DX13 prototype, did not contain such a depression. Kimberly–Clark notes that while Solomon argues that her approval of the patent application before it was filed and her oath of inventorship prove that she was the true inventor, her deposition testimony shows that she did not understand the application that her lawyer filed on her behalf. Lastly, while Kimberly–Clark acknowledges that it was unable to name the "true" inventor, it contends that section 102(f) only requires that the accused infringer prove by clear and convincing evidence that the alleged patentee is not the true inventor, which it has done.

Solomon responds that the district court correctly held that the claims were not invalid under section 102(f). Solomon argues that Kimberly–Clark failed to prove invalidity by clear and convincing evidence, because Kimberly–Clark failed to prove the identity of the true inventor, and Solomon's allegedly inconsistent testimony was

---

5. While Kimberly–Clark cites cases such as *Prater, Conley,* and *In re Cormany,* 476 F.2d 998, 177 USPQ 450 (CCPA 1973), for the proposition that inventor testimony obtained in the context of litigation can be used to invalidate a claim, as we have explained above, those cases address the use of inventor

testimony in the context of *patent prosecution.* As for the district court cases cited by Kimberly–Clark, *see Bontrager v. Steury Corp.,* 457 F.Supp. 526, 201 USPQ 813 (N.D.Ind.1978); *Inpro, Inc. v. A.W. Chesterton Co.,* 657 F.Supp. 935, 2 USPQ2d 1597 (N.D.Ill.1987), they are not binding on us and are not persuasive.

insufficient to invalidate the '381 patent. In any event, Solomon argues that she never testified that she was not the true inventor, and she notes that she actively assisted her patent attorney prepare her application and signed the oath of inventorship. While Solomon concedes that the DX13 prototype does in fact contain a depression region of uniform thickness, she points out that that prototype was one of several, and that another prototype, the DX2 prototype, contains a depression formed by material having two different thicknesses. Moreover, Solomon argues that her testimony and the prototypes are consistent with her contention from the beginning of this litigation that the patent claims cover both panties with a depression made of material having two different thicknesses and panties with a depression made of material of uniform thickness.

■■■■■■ Section 102(f) provides that "[a] person shall be entitled to a patent unless—he did not himself invent the subject matter sought to be patented. . . ." 35 U.S.C. § 102(f) (1994). Chisum explains that section 102(f)

> bars issuance of a valid patent to a person or persons who derive the conception of the invention from any other source or person. A corollary of this requirement is the rule of proper joinder of inventors. The rule operates both as to misjoinder (erroneous addition of a person who is not in fact a joint inventor) and as to nonjoinder (failure to add a joint inventor). Potentially, misjoinder and nonjoinder are as fatal to the validity of a patent (or the effectiveness of a filed application) as a case of complete inventorship error.

1 Chisum, *supra*, § 2.03, at 2–40 & nn. 1–2. If failure to comply with section 102(f) is proven by clear and convincing evidence, the claims of a patent will be held invalid. *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349, 47 USPQ2d 1657, 1661 (Fed.Cir.

1998) (setting forth this standard in the context of nonjoinder). However, when a party has been misjoined or nonjoined, a patent may be saved from invalidity by operation of 35 U.S.C. § 256. See id. at 1350, 155 F.3d 1344, 47 USPQ2d at 1662.

■■■■ We agree with Solomon that the district court correctly held that Kimberly–Clark failed to prove by clear and convincing evidence that the claims of the '381 patent are invalid under section 102(f). Although we understand Kimberly–Clark to contend that the claims are invalid under section 102(f) either because Solomon is simply not the true inventor and thus should not be named on the patent, or that someone else (Kimberly–Clark suggests Solomon's patent attorney) invented the claimed invention and should have been joined but was not, both of Kimberly–Clark's assertions fail for the same reason: Kimberly Clark relied entirely on Solomon's lack of precision in defining her invention in the course of her deposition and the DX13 prototype, rather than introducing clear and convincing evidence that someone else was the true inventor. While an inventor's statements made during the course of litigation might in some circumstances justify a court in concluding that the named inventor "did not himself invent the subject matter sought to be patented," 35 U.S.C. § 102(f), it would require much stronger evidence that the named inventor was not the true inventor to justify a conclusion of clear and convincing evidence of invalidity. Despite some vagueness and inconsistency in Solomon's deposition testimony, she maintained throughout that she invented the claimed subject matter, and she submitted evidence that the DX2 prototype in her patent attorney's files embodied the claimed invention. Moreover, the DX13 prototype actually supports Solomon's position, as she has consistently maintained from the outset of the litigation that her invention includes panties and panty liners with a

depression of uniform thickness. *See Solomon I*, 1998 WL 279346, at \*2. In light of that evidence, and in light of the fact that Kimberly–Clark failed to offer any evidence that a different inventor was responsible for the invention, the district court was correct to deny Kimberly–Clark's motion for summary judgment of invalidity under section 102(f).

As for the suggestion that Solomon's attorney might be the true inventor, we regard that argument as misguided. An attorney's professional responsibility is to assist his or her client in defining her invention to obtain, if possible, a valid patent with maximum coverage. An attorney performing that role should not be a competitor of the client, asserting inventorship as a result of representing his client. *Cf.* Patent and Trademark Office, U.S. Dep't of Commerce, *Manual of Patent Examining Procedure* app. R § 10.64 (7th ed.1998) ("Avoiding acquisition of interest in litigation or proceeding before the [Patent and Trademark] Office"). Thus, to assert that proper performance of the attorney's role is a ground for invalidating the patent constitutes a failure to understand the proper role of a patent attorney. Accordingly, we conclude that the district court did not err in rejecting Kimberly–Clark's section 102(f) invalidity defense. We therefore need not assess the remaining evidence presented by Kimberly–Clark, or reach the parties' arguments relating to 35 U.S.C. § 256.

## CONCLUSION

The district court correctly concluded that Kimberly–Clark failed to prove that the claims of the '381 patent are invalid under section 102(f). However, the court erred in invalidating those claims under section 112, paragraph 2. We therefore

*REVERSE.*