**ELI LILLY AND COMPANY,**
Plaintiff,

v.

**ZENITH LABORATORIES,**
**INC., Defendant.**

No. IP 95–536–C (B/S).

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 27, 2001.

Paul H. Berghoff, McDonnell, Boehnen, Hurlbert & Berghoff, Chicago, IL, John R. Schaibley, III, Baker & Daniels, Indianapolis, IN, Thomas G. Slater, Jr., Hunton & Williams, Richmond, VA, Paul F. Ware, Jr., Goodwin Proctor & Hoar, LLP, Boston, MA, for plaintiff.

Stephen E. Arthur, Harrison & Moberly, Indianapolis, IN, William L. Mentlik, Lerner David Littenberg Krumholz & Mentlik, Westfield, NJ, Keith E. Rounsaville, Stearns Weaver Miller Weissler Alhadeff & Sitterson, Tampa, FL, Jay B. Shapiro, Stearns Weaver Miller Weissler Alhadeff & Sitterson, Miami, FL, for defendant.

## ENTRY ON ZENITH'S MOTION FOR SUMMARY JUDGMENT UNDER 35 U.S.C. § 287 AS TO LILLY'S HATFIELD PATENT CLAIM

BARKER, District Judge.

This cause is before the Court on the motion of defendant Zenith Laboratories, Inc. ("Zenith") entitled Zenith's[1] Motion for Summary Judgment Under 35 U.S.C. § 287 as to Lilly's Hatfield Claim. The motion is fully briefed, and the Court, being duly advised, DENIES the motion for the reasons set forth below.

### BACKGROUND

The facts relevant to the instant motion are largely undisputed. This patent infringement action involves the antibiotic cefaclor, which plaintiff Eli Lilly and Company ("Lilly") markets under the brand name Ceclor®. Lilly owns several patents

---

1. The motion originally was filed by both Zenith and American Cyanamid Company; American Cyanamid has since been dismissed from this suit.

related to cefaclor. At issue in the instant motion is United States Patent No. 4,226,-986 ("the Hatfield patent"), which relates to a method for manufacturing cefaclor. Specifically, the Hatfield patent relates to a process by which triphenylphosphite dichloride is used to chlorinate an enol cephem compound to produce a 3-chloro-cephem intermediate, which is in turn used for the manufacture of cefaclor.

Zenith is in the business of manufacturing and marketing generic drugs. As early as May 1992, Zenith began negotiating with Roussel Corp. ("Roussel") to purchase bulk cefaclor, which it intended to formulate into dosage form and sell in the United States once it received approval from the Food and Drug Administration ("FDA") to do so. Roussel agreed to supply Zenith with bulk cefaclor manufactured by an Italian company, Biochimica Opos S.p.A. ("Opos"). In April 1995, Zenith received its FDA approval, and shortly thereafter began selling generic cefaclor in the United States.

In this action, Lilly asserts that the process used by Opos to manufacture cefaclor infringed upon the Hatfield patent. Lilly further asserts that Zenith is liable for infringing upon the Hatfield patent because it imported Opos's infringing cefaclor into the United States.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." In ruling on a motion for summary judgment, " '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor.' " *Solomon v. Kimberly–Clark*

*Corp.*, 216 F.3d 1372, 1377 (Fed.Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A genuine issue exists if the evidence is such that a reasonable jury could find for the nonmoving party. *See General Mills, Inc. v. Hunt–Wesson, Inc.*, 103 F.3d 978, 980 (Fed.Cir. 1997).

## DISCUSSION

Lilly asserts that Zenith is liable for infringing upon the Hatfield patent pursuant to 35 U.S.C. § 271(g), which provides, in relevant part:

> Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

In the instant motion for summary judgment, Zenith argues that, even assuming Opos infringed upon the Hatfield patent, the safe harbor provisions of 35 U.S.C. § 287(b) apply to Zenith's purchase of Opos's bulk cefaclor, and therefore Zenith cannot be liable for infringement. 35 U.S.C. § 287(b)(2) provides that an importer of an infringing product is not liable for infringement under 35 U.S.C. § 271(g) unless it "had notice of infringement with respect to that product." "Notice of infringement" is defined by the statute as "actual knowledge, or receipt by a person of a written notification, or a combination thereof, of information sufficient to persuade a reasonable person that it is likely that a product was made by a process patented in the United States." 35 U.S.C. § 287(b)(5)(A).

Zenith argues that there is no evidence that it had actual knowledge during the relevant time period that Opos was infring-

ing upon the Hatfield patent, something that Lilly does not directly dispute. However, Lilly argues that Zenith falls outside of the safe harbor provided by 35 U.S.C. § 287(b)(2) because Zenith is deemed to have notice of infringement by operation of other provisions of 35 U.S.C. § 287.[2] Specifically, Lilly points to 35 U.S.C. § 287(b)(5)(C), which provides, in relevant part:

> (C) A person who receives . . . a written response to a request for disclosure described in paragraph (4)[3] shall be deemed to have notice of infringement with respect to any patent referred to in such written . . . response unless that person, absent mitigating circumstances—
>
>> (i) promptly transmits the written notification or response to the manufacturer or, if the manufacturer is not known, to the supplier, of the product purchased or to be purchased by that person; and

**2.** Lilly asserts several reasons why summary judgment is inappropriate. Because the resolution of Lilly's first argument dictates denial of the motion for summary judgment, the Court need not, and does not, address the remaining arguments, which include whether Zenith obtained an abnormally large quantity of bulk cefaclor from Opos and whether Zenith controlled Opos.

**3.** 35 U.S.C. § 287(b)(4)(A) provides:

> For purposes of this subsection, a "request for disclosure" means a written request made to a person then engaged in the manufacture of a product to identify all process patents owned by or licensed to that person, as of the time of the request, that the person then reasonably believes could be asserted to be infringed under section 271(g) if that product were imported into, or sold, offered for sale, or used in, the United States by an unauthorized person. A request for disclosure is further limited to a request—
> (i) which is made by a person regularly engaged in the United States in the sale of

> (ii) receives a written statement from the manufacturer or supplier which on its face sets forth a well grounded factual basis for a belief that the identified patents are not infringed.

In this case, in March 1991, pursuant to 35 U.S.C. § 287(b)(4)(A), Opos and Roussel each sent a written request to Lilly seeking identification of all process patents related to cefaclor that were owned or licensed by Lilly. Zenith's Exs. 1 & 3. Lilly responded to each with a list of 23 process patents, including the Hatfield patent. Zenith's Exs. 2 & 4. During the course of Zenith's negotiations with Roussel, by letter dated June 10, 1992, Roussel forwarded to Zenith Lilly's response to Opos's request, along with a copy of a diagram which Roussel described as "a copy of the process diagram for the Opos cefaclor synthesis." Lilly's Ex. C.

At that point, Zenith became a "person who receives . . . a written response to a request for disclosure," and therefore, ab-

> the same type of products as those manufactured by the person to whom the request is directed, or which includes facts showing that the person making the request plans to engage in the sale of such products in the United States;
> (ii) which is made by such person before the person's first importation, use, offer for sale, or sale of units of the product produced by an infringing process and before the person had notice of infringement with respect to the product; and
> (iii) which includes a representation by the person making the request that such person will promptly submit the patents identified pursuant to the request to the manufacturer, or if the manufacturer is not known, to the supplier, of the product to be purchased by the person making the request, and will request from that manufacturer or supplier a written statement that none of the processes claimed in those patents is used in the manufacture of the product.

Pursuant to this subsection, both Opos and Roussel made a request for disclosure to Lilly regarding cefaclor in March 1991.

sent "mitigating circumstances," pursuant to 35 U.S.C. § 287(b)(5)(C), Zenith was "deemed to have notice of infringement" of the Hatfield process unless it:

1. promptly transmitted Lilly's response to Opos, as the manufacturer of the bulk cefaclor Zenith intended to import, and

2. received a written statement from Opos "which on its face sets forth a well grounded factual basis for a belief" that Opos was not infringing upon the Hatfield patent.

Zenith admittedly did not comply with the first requirement; however, the Court agrees with Zenith that it was not required to do so in this particular instance because of a mitigating circumstance—the fact that Lilly sent the written disclosure to Opos in the first place, and therefore no purpose would have been served by Zenith also sending a copy of the disclosure to Opos.

Zenith argues that it satisfied the second requirement because it received a copy of Opos's process diagram which, Zenith asserts, demonstrates on its face that the process used by Opos did not infringe upon the Hatfield patent.[4] The problem with this argument is that Zenith received the process diagram from its supplier, Roussel, not from the manufacturer, Opos, while 35 U.S.C. § 287(b)(5)(C) clearly requires the "written assurance" to come from the manufacturer. A written assurance from the supplier is acceptable only in cases in which the manufacturer is not known. It is not elevating form over substance to enforce this requirement—one can easily imagine a situation in which a disreputable or simply uninformed supplier could provide incorrect or misleading information to its customer to convince the customer that there is no patent infringe-

ment problem, while a simple request to the manufacturer would provide accurate information which would show that the patent was infringed.[5] Further, the legislative history of the statute indicates that the drafters specifically intended to require the importer to communicate directly with the manufacturer. See S. Rep. 100–83 at 56 (1987) ("Submission of the response to a request for disclosure to the requester's manufacturer/supplier is mandated because that manufacturer knows the process being used and therefore is in the best position to avoid infringement or provide evidence that the patented process is not being used, if that is the case."). In balancing the rights of U.S. patent holders to enforce their patents with the desire to avoid creating an onerous systems of proverbial hoops through which innocent importers must jump to avoid the possibility of patent infringement liability, Congress clearly determined that requiring an importer to deal directly with the manufacturer in this instance was not overly burdensome in light of the extra degree of protection it could provide patent holders. Zenith has provided no evidence that it requested or obtained the required information and assurances from Opos, its known manufacturer, and therefore pursuant to the statute Zenith is deemed to have notice that Opos was infringing upon the Hatfield patent.[6]

That is not to say that there was no way in which information provided to Zenith by Roussel could have satisfied 35 U.S.C. § 287(b)(5)(C)(ii). If, for example, Roussel had received a specific, well-grounded written assurance of non-infringement from Opos which Opos clearly intended for Roussel to transmit to Zenith, that would likely be a mitigating circumstance which

---

4. Lilly vehemently disputes this assertion.

5. The Court does not mean to suggest that was the situation in this case.

6. Obviously, in order ultimately to prevail, Lilly will have to establish that Opos did, in fact, infringe upon the Hatfield patent.

would excuse the fact that Zenith did not receive it from Opos directly. However, the record is void of evidence that that was the situation in this case. Indeed, while Zenith specifically asserts twice that Roussel received the process diagram from Opos, *see* Zenith's Statement of Additional Evidence on Reply at ¶¶ 59 and 61, there is no evidence on the record to support Zenith's assertion that the process diagram it received from Roussel actually originated from Opos. Rather, Roussel avers only that it "had no access to information about [Opos's] processes except to the extent that Opos provided it." Lilly's Exhibit W, Declaration of Michel Prou at ¶ 3. Further, there is no evidence that the diagram was intended by Opos to be transmitted to Zenith, or, more importantly, that it was intended to represent the process it used to manufacture cefaclor. The letter from Roussel's counsel to Zenith states only that he was enclosing "[o]n behalf of Roussel Corp .... a copy of the process diagram for the Opos cefaclor synthesis," and there is nothing on the diagram itself that indicates that it came from Opos, or even what it purports to represent.[7] *See* Lilly's Ex. C. 35 U.S.C. § 287(b)(5)(C)(ii) requires at least that much; there can be no well-grounded factual basis for the belief that a process is non-infringing if there is not first a reliable representation of what the process is, and the statute requires an importer to obtain this information from its manufacturer, if known, not from its supplier. Because Zenith admittedly made no attempt to obtain this information directly from Opos, or at least to have Opos verify that the information it obtained from Roussel was accurate, it is not entitled to the protection of the safe harbor provision of 35 U.S.C. § 287(b)(2). Rather, Zenith is deemed to have notice of any infringement of the Hatfield patent by Opos that Lilly ultimately is able to prove in this action.

### CONCLUSION

For the reasons set forth above, Zenith's motion for summary judgment as to Lilly's Hatfield patent claim is **DENIED** in its entirety.

---

7. While it was not cited by either party for this point, the Court notes that paragraph 2 of the Declaration of Arnold H. Krumholz, Zenith's patent counsel to whom Roussel sent the process diagram, contains the statement that the diagram was provided to Krumholz "by Opos." It is clear from the record as a whole, including Krumholz's deposition and Zenith's argument in its reply brief, that Krumholz is referring to the diagram it received from Roussel, which he understood to have originated from Opos. There is no evidence that Zenith, either independently or through Krumholz, had any independent information from Opos regarding its process, other than what it received from Roussel. *See, e.g.,* Lilly's Exhibit E, Krumholz Dep. at p. 33 (excluding Roussel's attorney, he does not recall "any contact between [him] and anyone at Opos at any time regarding any cefaclor matters.").