**INTEX RECREATION CORP.,**
**Plaintiff/Counterclaim**
**Defendant,**

v.

**TEAM WORLDWIDE CORPORATION,**
**Defendant/Counterclaim Plaintiff.**

**Civil Action No. 04–1785 PLF/DAR.**

United States District Court,
District of Columbia.

Jan. 5, 2007.

Gerald Francis Ivey, Christopher W. Day, Edward J. Naidich, John M. Williamson, Kara F. Stoll, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P. Washington, DC, for Plaintiff/Counterclaim Defendant.

Christian Anh Vu Chu, Linda Liu Kordziel, Fish & Richardson, P.C., Washington, DC, Kurt L. Glitzenstein, Laura R. Braden, Michael S. Forman, Fish & Richardson, P.C., Boston, MA, for Defendant.

### MEMORANDUM ORDER

DEBORAH A. ROBINSON, United States Magistrate Judge.

Pending for determination by the undersigned United States Magistrate Judge is Plaintiff Intex Recreation Corporation's Emergency Motion to Compel ("Intex's Motion") (Docket No. 61). Intex moves to compel Team Worldwide ("TWW"), including its agents and attorneys Nelson A. Quintero ("Quintero"), and exclusive distributor American Recreation Products, Inc. ("ARP"), to provide all testimony and produce all documents, including those claimed to be subject to the attorney-client privilege and work-product immunity as to any communications by and between ARP, and/or its counsel, and TWW or Quintero, as well TWW and/or Quintero and counsel for ARP prior to August, 2005. Intex's Motion at 1. TWW objects to Intex's motion and submits that the motion is "untimely" and that "the common interest doctrine protects all withheld communications with ARP[.]" Defendant Team Worldwide Corporation's Opposition to Plaintiff Intext recreation Corp.'s Emergency Motion to Compel ("TWW's Opposition") (Docket No. 65) at 1, 6. In its reply, Intex argues that its motion was timely, that the discovery it requests is relevant, and that TWW's evidence "shows only a commercial relationship, not a 'coordinated legal strategy[,]' " as suggested by TWW.

Reply in Support of Emergency Motion to Compel of Plaintiff and Counterclaim–Defendant Intex Recreation Corp. ("Intex's Reply") (Docket No. 69) at 4–7.

Upon consideration of the motion, the memoranda in support thereof and in opposition thereto and the entire record herein, Intex's motion will be **GRANTED IN PART.**

### Background

Plaintiff/counterclaim Defendant Intex Recreation Corporation ("Intex") brings this patent infringement suit seeking a judgement against Defendant/counterclaim Plaintiff Team Worldwide Corporation ("TWW") declaring that Intex's products do not infringe TWW's U.S. Patent 6,793,-469 ("469 Patent"), and that the '469 patent is invalid. See Complaint for Declaratory Relief and Patent Invalidity (Docket No. 1), ¶¶ 6–16. In response to Intex's declaratory judgment action, TWW counterclaimed against Intex, and alleged that Intex's products willfully infringed the '469 patent. Counterclaim of Defendant Team Worldwide (Docket No. 10), ¶¶ 6–11

Prior to the issuance of the '469 patent, TWW entered into an exclusive distribution agreement with American Recreation Products ("ARP"), by which ARP became the exclusive United States distributor of TWW's products. Memorandum in Support of Emergency Motion to Compel of Plaintiff and Counterclaim–Defendant Intex Recreation Corp. ("Intex's Memorandum") at 1. In August, 2005, TWW and ARP entered into a "Common Interest Agreement" ("CI Agreement"). Id. at 2.

The circumstances which occasioned the filing of Intex's motion to compel arose following Intex's notice of the depositions of Nelson Quintero, TWW's patent counsel, and ARP, as well as its subpoena of

documents in relation to those depositions. *Id.* Prior to the depositions, TWW, Quintero and ARP submitted objections and produced privilege logs. *Id.* ARP was deposed on May 31, 2006, and the company's designee was instructed not to answer questions relating to communications he had with TWW or Quintero regarding the litigation. *Id.* Additionally, ARP withheld from production communications between ARP, TWW and Quintero based on the attorney-client and work product privileges. *Id.* at 3.

Intex maintains that many of the communications and documents TWW and ARP objected to pre-date the Common Interest Agreement. *Id.*

### The Parties' Contentions

Intex, in its motion to compel, contends that TWW and ARP entered into their CI Agreement in August, 2005 and that TWW has not offered any compelling reason why the CI Agreement should be given a retroactive effect. Intex's Memorandum at 4. Intex maintains that TWW and ARP "seek to expand the 'common interest' doctrine to include communications between TWW and ARP as well as ARP and Quintero relating to business issues, unrelated to any pending or prospective litigation." *Id.* at 5. Intex argues that it is well-settled that a party's use of the common interested doctrine is predicated on having a common legal interest with another party and not merely a business or commercial interest. *Id.* at 6. In support of its contention, Intex relies upon *Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13, 16 (D.D.C.2005).

Intex submits that courts have held that "parties must show an expressed intent to cooperate in the litigation[,]" and that "[t]here is no evidence of such an intent prior to the CI Agreement and certainly not prior to the initiation of the instant litigation, and there is nothing in the Exclusive Distribution Agreement that creates any sort of common interest arrangement between the parties." Intex's Memorandum at 7. Intex further submits that "any common interests should be limited only as of the date of the CI Agreement was executed by the parties, August 2005." *Id.* at 8.

TWW, in its opposition, offers three grounds for which Intex's motion should be denied. First, TWW submits that the motion to compel is untimely because it was filed more than three weeks after the close of fact discovery. TWW's Opposition at 4. TWW maintains that it made Intex's counsel aware in mid-May that it intended to rely on the common interest doctrine as a basis for asserting the attorney client and work product privilege as objections to Intex's discovery requests. *Id.* TWW further maintains that Intex did not meet and confer with TWW until June 9, 2006. *Id.* at 5. Second, TWW argues that Intex has failed to show that its discovery requests are relevant. *Id.* TWW contends that "[t]here is nothing in any communications between TWW and ARP that could possibly affect the scope of TWW's patent rights[,]" and that "[s]tatements by TWW or ARP about the patent, particularly those made four, five, and six years later, are simply irrelevant." *Id.*

Finally, TWW submits that "TWW and ARP have over the past six years formed and engaged in a coordinated legal strategy, first with regard to obtaining the patent in suit, and second with regard to enforcing the patent." TWW's Opposition at 7. TWW argues that it has engaged in a "coordinated legal strategy" with ARP to obtain patent '469, as well as enforce patent '469. *Id.* As an example of this coordinated legal strategy relating to enforcement, TWW relies upon the nearly identical letters it and ARP sent to Intex informing them of their belief that Intex's products infringed the '469 patent. *Id.,*

Exs. 1, 2. TWW submits that it began exchanging draft common interest agreements with ARP in December, 2004, and that "[b]ecause the case was on hold for roughly eight months while the Court considered TWW's motion to dismiss certain IRC claims, the Common Interest Agreement was ultimately finalized and signed in August of 2005." *Id.* TWW submits that "[a]ll of the cases cited by IRC hold that a written agreement is not required to assert the common interest doctrine, the withholding party must show that there was an expressed intent by the third party to cooperate in the litigation or that the parties were pursuing a common legal strategy in order to properly assert the common interest doctrine." *Id.* at 9. TWW further submits that "TWW and ARP repeatedly and clearly expressed the requisite intent, dating back to 2000." *Id.* TWW maintains that the 2000 Exclusive Distribution Agreement, the separate letters to Intex from ARP and TWW in October, 2004, and the Common Interest Agreement which was started in December, 2004 and finalized in August, 2005 provide examples of TWW's and ARP's express intention to participate in a coordinated legal strategy. *Id.*

Intex, in its reply, argues that its motion to compel is timely. Intex's Reply at 4. Intex submits that it did not receive a copy of the CI Agreement until May 31, 2006 when it deposed ARP, and that it did not receive ARP's and Mr. Quintero's privilege logs until May 26 and May 30, respectively. *Id.* Intex maintains that [i]t was only after the privilege logs were produced, the CI Agreement provided and the ARP deposition concluded that a motion could be brought and IRC proceeded expeditiously at that time. *Id.* Intex further argues that "in the context of claim of infringement as well as the issue of actual inventor, communications between TWW and ARP as well as Quintero and ARP is relevant."

*Id.* at 6. Finally, Intex submits that TWW's "evidence shows only a commercial relationship, not a 'coordinated legal strategy.'" *Id.*

## Discussion

### Timeliness

██ As a threshold matter, the undersigned finds that Intex's motion to compel is timely. It is undisputed that fact discovery in this matter closed on May 30, 2006, and Intex did not file the instant motion to compel until June 23, 2006. Additionally, while TWW contends in its opposition that it informed Intex of its intention to rely on the common interest doctrine as a basis for its attorney client and work product privileges objections, TWW does not dispute that ARP did not produce a privilege log until May 26, 2006. TWW's Opposition at 4. Furthermore, Intex submits that Mr. Quintero's privilege log was not produced until May 30, 2006, and that a copy of the CI Agreement was not provided until ARP was deposed on May 31, 2006. Intex's Reply at 4. Moreover, TWW did not submit its own privilege log until June 28, 2006, after the instant motion was filed.

TWW does not provide any authority for its contention that Intex's motion is untimely. While Intex's motion was filed following the close of discovery, as Intex argues in its reply, "[i]t was only after the privilege logs were produced, the CI Agreement provided and the ARP deposition concluded that a motion could be brought[.]" Intex's Reply at 4. Accordingly, the undersigned finds that Intex's motion to compel was timely.

### The Common Interest Doctrine

 "The joint defense privilege, often referred to as the common interest rule, is an extension of the attorney-client privilege that protects from forced disclo-

sure communications between two or more parties and/or their respective counsel if they are participating in a joint defense agreement." *United States v. Hsia*, 81 F.Supp.2d 7, 16 (D.D.C.2000). "It protects communications between the parties where they 'are part of an on-going and joint effort to set up a common defense strategy' in connection with actual or prospective litigation." *Minebea*, 228 F.R.D. at 15 (citation omitted). Additionally, the rule applies not only to communications subject to the attorney-client privilege, but also to communications and documents protected by the work product doctrine. *Id.* at 16.

 "In order to establish the existence of a joint defense privilege, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *Minebea*, 228 F.R.D. at 16 (*citing In re Bevill, Bresler & Schulman Asset Management*, 805 F.2d 120, 126 (3d Cir.1986)); *U.S. ex rel Purcell v. MWI Corp.*, 209 F.R.D. 21, 25 (D.D.C.2002). A party which relies on the joint defense privilege or common interest doctrine must establish that "the parties had agreed to pursue a joint defense strategy." *Minebea*, 228 F.R.D. at 16. A written agreement is the most effective method of establishing the existence of a common interest agreement, although an oral agreement whose existence, terms and scope are proved by the party asserting it, may provide a basis for the requisite showing. *Id.*

 Additionally, if a common interest agreement has been proved to exist, the party seeking to rely on the doctrine must still demonstrate that the specific communications at issue were designed to facilitate a common legal interest; a business or commercial interest will not suf-

fice. *Minebea*, 228 F.R.D. at 16 (*citing Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y.1995)). The party seeking to rely on the doctrine must therefore provide evidence of a "coordinated legal strategy" between itself and another party or parties. *Id.*

 Intex argues that TWW and ARP did not enter into a "coordinated legal strategy" until the execution of its CI Agreement in August, 2005. TWW maintains that it entered in a "coordinated legal strategy" with ARP when the companies executed their exclusive distribution agreement in 2000. However, the undersigned rejects TWW's contention, and finds that the execution of the exclusive distribution agreement does not evidence a "coordinated legal strategy." However, the undersigned also rejects Intex's contention that TWW and ARP did not enter into a "coordinated legal strategy" until the execution of their CI Agreement in August, 2005. Instead, the undersigned finds that TWW and ARP entered into a coordinated legal strategy on or about October 8, 2004, when both companies sent letters to Intex demanding that it cease manufacturing products which allegedly infringed patent '469.

The undersigned observes that TWW provides no authority for its contention that where two parties have entered into an exclusive distribution agreement that they have also entered into a "coordinated legal strategy." As the undersigned noted earlier, the common interest doctrine protects communications between parties that have entered into an agreement to establish a common defense strategy in connection with actual or prospective litigation. *See Minebea*, 228 F.R.D. at 15; *see also In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir.2005) (the common interest doctrine "protects communications between parties who

share a common interest in litigation"). The undersigned finds that TWW and ARP's execution of an exclusive distribution agreement is an agreement to enter into a common "business or commercial interest," which courts have explicitly held is not protected by the common interest doctrine.

However, after a review of the documents provided to the undersigned with the parties' submissions, the undersigned finds that TWW and ARP did facilitate a "common legal interest" and enter into a "coordinated legal strategy" when they sent virtually identical letters to Intex in October, 2004. This court has held that "generally, a joint defense privilege begins on the date the agreement is executed[,]" but that "there may sometimes be facts and circumstances other than a writing that prove there was a firm understanding that certain kinds of shared information is to be treated as privileged." *Minebea,* 228 F.R.D. at 17.

Here, it is apparent that TWW and ARP, upon formulating the belief that Intex may have been selling products that allegedly infringed the '469 patent, began working together to enforce the '469 patent. The October 8, 2004 demand letters sent by both companies to Intex were virtually identical. Both letters informed Intex that it should expect a similar letter from TWW and ARP, respectively. *See* TWW's Opposition, Exs. 1, 2. Additionally, both letters demanded that Intex "cease and desist all manufacture, use, importation, offers and sales of infringing products, and that you agree not to infringe in the future." *Id.* Within less than two weeks after receiving the letters, Intex filed its complaint for declaratory relief. *See* Complaint for Declaratory Relief and Patent Invalidity (Docket No. 1), ¶¶ 6–11.

The undersigned finds that TWW and ARP's letters evidence their intent to en-

ter into a "coordinated legal strategy" to enforce the '469 patent. Accordingly, the undersigned finds that TWW must produce all documents dated prior to October 8, 2004 which it is currently withholding pursuant to the common interest doctrine.

*Relevance*

█ Rule 26(b)(1) of the Federal Rules of Civil procedure provides, in pertinent part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party[.]" Fed.R.Civ.P. 26(b)(1). Intex submits that the discovery it seeks "is relevant or may lead to the discovery of admissible evidence in that such may contain admissions as to how TWW and/or its distributor construed the patent and how prior art or other competing products were evaluated, thereby impacting not only TWW's claim of infringement, but also IRC's defenses." Intex's Memorandum at 3. TWW disagrees, and argues that the scope of its patent rights is determined by the claims of the patent and that any statements made by TWW or ARP about the patent are irrelevant. TWW's Opposition at 6. In support of its position, TWW cites *Johnson & Johnston Assocs., Inc. v. R.E. Serv. Co.,* 285 F.3d 1046, 1052 (Fed.Cir.2002) *(en banc),* and *Solomon v. Kimberly–Clark Corp.,* 216 F.3d 1372, 1379–80 (Fed.Cir.2000).

In its reply, Intex maintains that it is unable to provide further detail regarding the relevance of the information sought because both the TWW and ARP privilege logs generically describe the documents withheld. Intex's Reply at 5. Additionally, Intex submits that the "the issues to which such communications, and testimony, may relate would include the issue of inventor of the patent-in-suit, as communication between ARP and TWW and ARP and Quintero could be directed to such topics." *Id.* Intex further submits that the commu-

nications "may also address the issue of claim construction and infringement including such matters as what the prior are known to the inventor was, what persons skilled in the art understood the prior art to include as well as the meaning of the terms used in the application itself." *Id.* Finally, Intex argues that TWW's reliance on *Solomon v. Kimberly–Clark Corp.* is misplaced. Intex maintains that the circumstances of the instant dispute are distinguishable from the issues presented in that case. Specifically, Intex submits that in *Solomon,* the court addressed a claim of invalidity under 35 U.S.C. § Section 112, not infringement or patentability. *Id.* Additionally, the court in *Solomon* found that "litigation derived inventor testimony" was irrelevant, not communications between the purported inventor, or his company with a third-party. *Id.*

The undersigned finds that the discovery Intex seeks is relevant to the claims or defenses of the parties. A review of the privilege logs show that TWW's description of the withheld documents concerns the "infringement investigation" regarding the '469 patent. *See* Intex's Memorandum, Ex. D. It is undisputed that infringement of the '469 patent, is central to the claims and defenses of the parties in this litigation. Intex has filed an action for declaratory relief requesting that the court find that it has not infringed the '469 patent and TWW has counterclaimed against Intex for wilful infringement of the '469 patent. Accordingly, TWW's and Mr. Quintero's non-privileged communications with ARP concerning the "infringement investigation" are relevant to both parties' claims.

The undersigned further finds that the authorities on which TWW relies do not address relevance in the context of discovery. The Federal Circuit in both *Johnson & Johnston* and *Solomon* addressed evidence relevant to determining the scope of the patent in the context of resolving motions for summary judgment. *See Johnson & Johnston,* 285 F.3d at 1052; *Solomon,* 216 F.3d at 1379. Additionally, TWW's reliance on *Solomon* for the proposition that the Federal Circuit has held that the testimony of the inventor of the patent is irrelevant is of no moment. The facts of *Solomon* are distinguishable from the instant action. In *Solomon,* the court held that the inventor's testimony about the patent claims was irrelevant with respect to the meaning of the words utilized in the claims of the patent. *Solomon,* 216 F.3d at 1379. Here, the evidence Intex seeks concerns communications the inventor may have made at the time of the preparation of the patent application. Accordingly, the Federal Circuit's holdings in *Johnson & Johnston* and *Solomon* do not provide a basis to hold that Intex's discovery requests are irrelevant.

### Conclusion

Upon consideration of Intex's Motion to Compel, the memoranda in support thereof and in opposition thereto and the entire record herein, it is, this 5th day of January, 2007,

**ORDERED** that Plaintiff Intex Recreation Corporation's Emergency Motion to Compel (Docket No. 61) is **GRANTED IN PART;** and it is

**FURTHER ORDERED** that TWW shall respond to Plaintiff's discovery requests in accordance with this Memorandum Order by no later than January 22, 2007; and it is

**FURTHER ORDERED** that in all other respects, Intex's Motion to Compel is **DENIED.**