NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1292

ASPEX EYEWEAR, INC.,

Plaintiff-Appellant,

and

CONTOUR OPTIK, INC.,

Plaintiff,

v.

E'LITE OPTIK, INC.,

Defendant-Appellee.

_____

DECIDED: March 24, 2005

_____

Before MICHEL, Chief Judge, RADER and SCHALL, Circuit Judges.

MICHEL, Chief Judge.

Aspex Optik, Inc. ("Aspex") appeals the grant of summary judgment by the United States District Court for the District of Nevada in favor of E'Lite Optik, Inc. ("E'Lite") that Aspex lacked standing to sue E'Lite for infringement of U.S. Patent Nos. 5,737,054 and 6,012,811 (the "'054 and '811 patents," respectively) as an exclusive licensee. Aspex Eyewear, Inc. & Contour Optik, Inc. v. E'Lite Optik, Inc., No.

CV-S-00-1116PMP (D. Nev. Aug. 6, 2003). The appeal was submitted after oral argument on March 9, 2005. Because we agree with the district court that Aspex is not an exclusive licensee of the asserted patents, we affirm.

## I.     BACKGROUND

### A.     The Asserted Patents

The '054 patent was filed as U.S. Application No. 766,327 (the "'327 application") and issued on April 7, 1998, naming Richard Chao as the sole inventor. The '811 patent, filed as U.S. Application No. 963,299 (the "'299 application"), is a continuation-in-part of the '054 patent. It issued on January 11, 2000, with brothers David and Richard Chao as the named co-inventors. The '054 and '811 patents are generally directed to eyeglass frames with magnets positioned at the bridges to allow for the attachment of auxiliary lenses.

### B.     Chic-Aspex Agreement

Chic Optic, Inc. ("Chic") is a Canadian corporation based in Montreal, Canada, and Aspex is a Delaware corporation based in Miramar, Florida. Both companies are owned and operated by the Ifergan family. Nonu Ifergan serves as President of both Aspex and Chic. His son, Tierry Ifergan, is the Executive Vice President of Aspex. Chic and Aspex are engaged in the business of distributing eyewear, including auxiliary lenses that attach to primary frames via a magnet, in Canada and the United States, respectively.

In March 1998, Chic and Aspex entered into a written license agreement wherein Chic was defined as the "LICENSOR" and Aspex as the "LICENSEE" ("Chic-Aspex Agreement"). Under the terms of this agreement, Chic granted Aspex an exclusive

2

license in the United States to any rights it had acquired from third parties relating to patents involving magnetic eyewear. Since the execution of the agreement, Aspex has purchased products made according to the asserted patents from Chic for resale in the United States.

### C. Chao-Chic Agreement

In July 1998, Richard Chao, the sole named inventor of the '054 patent and one of the named co-inventors of the '811 patent, granted Chic an exclusive license in Canada and the United States to the '327 and '299 applications and any patents issued thereon (i.e., the asserted '054 and '811 patents) ("Chao-Chic Agreement"). In July 1999, Richard Chao and his brother David Chao together assigned the asserted patents to their company, Contour Optik, Inc. ("Contour"), Aspex's co-plaintiff in this litigation.

### D. Prior Court Proceedings

In September 2000, Aspex and Contour filed an infringement action against E'Lite for willful infringement of the '054 and '811 patents. Chic, however, was not named as a party to the suit. E'Lite moved for summary judgment on grounds that Aspex lacked standing to sue, alleging that Chic could not have granted an exclusive license for the asserted patents to Aspex because, at the time that Chic and Aspex entered into the Chic-Aspex Agreement, Chic did not have any rights to either the '054 or '811 patent. Aspex and Contour opposed, supporting their brief in opposition with the deposition testimony of Thierry Ifergan ("Ifergan Deposition"), Aspex's designated Rule 30(b)(6) witness. In its reply, E'Lite asserted that because Thierry Ifergan lacked personal knowledge about the negotiation and scope of the Chic-Aspex Agreement, his deposition was inadmissible under Fed. R. Evid. 602.

3

The district court ruled in favor of E'Lite, concluding that the Ifergan Deposition was not proper summary judgment evidence because Thierry Ifergan lacked personal knowledge regarding the Chic-Aspex Agreement. Aspex Eyewear, Inc. & Contour Optik, Inc. v. E'Lite Optik, Inc., No. CV-S-00-1116, slip op. at 8. The district court also concluded that the Aspex lacked standing to sue because it failed to show that it was an exclusive licensee of the asserted patents under the Chic-Aspex Agreement. After careful examination of the terms of the Chic-Aspex Agreement, the district court reasoned that Chic did not convey any future-acquired patent rights, but instead only those that it owned at the time that it executed the Chic-Aspex Agreement and those that derive from or are related to its then-owned patents. Id., slip op. at 7-8. Thus, the district court initially ordered all claims against E'Lite dismissed, but later amended its order to dismiss only Aspex's claims, not Contour's.

Aspex and Contour filed a motion for reconsideration or, in the alternative, to add Chic as a necessary party under Fed. R. Civ. P. 19(a). The district court denied that motion without opinion. Aspex timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II.    DISCUSSION

"A licensee is not entitled to bring suit in its own name as a patentee, unless the licensee holds 'all substantial rights' under the patent." Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998) (quoting Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 875 (Fed. Cir. 1991)). "Determining whether a licensee is an exclusive licensee or a bare licensee is a question of ascertaining the intent of the parties to the license as manifested by the terms of their

4

agreement and examining the substance of the grant.  Id.  (internal citations and quotations omitted).

Aspex asserts that it has standing to enforce the asserted patents against E'Lite as an exclusive licensee under the Chic-Aspex Agreement because (1) that agreement granted Aspex an exclusive license not only to then-owned patents, but also to future-acquired patents; and (2) Chic acquired an exclusive license to the asserted patents after execution of the Chic-Aspex Agreement by way of the Chao-Chic Agreement. E'Lite responds by arguing that the plain language of the Chic-Aspex Agreement refers to only then-owned patents and is silent as to the asserted patents as well as any other future-acquired patents.  E'Lite, therefore, maintains that Chic had no rights to the '054 and '811 patents at the time it entered into the Chic-Aspex Agreement and that Aspex, as a result, cannot be an exclusive licensee of the asserted patents with standing to sue.

Like the district court, we agree with E'Lite that the plain language of the Chic-Aspex Agreement makes it clear that the agreement relates only to patents then-owned by Chic, not future-acquired ones.  The relevant portions of the Chic-Aspex Agreement provide:

> WHEREAS, LICENSOR is the owner of rights ("LICENSED PATENTS") embodied in various Agreements ("LICENSOR'S AGREEMENTS") relating to magnetic eyewear for eyeglasses;
>
> WHERAS, immediately upon entering into the LICENSOR'S AGREEMENTS, LICENSOR vested and/or shall vest in LICENSEE its rights under the LICENSOR'S AGREEMENTS . . .
>
> . . .
>
> 1.      LICENSOR grants to LICENSEE an exclusive license to make, use, sell, or have made any products under the LICENSED

5

PATENTS including all divisional, continuations, continuations-in-part, continuing patent applications (whether related to such application(s) directly or through one or more intervening applications), extensions or reissues of said licensed patents, and any patent which may issue thereon. LICENSOR shall update and advise the LICENSEE when pending applications which are divisional, continuations, continuations-in-part, extensions or reissues of the LICENSED PATENTS have been filed or have issued as patents (whether related to such application(s) directly or through one or more intervening applications).

(Emphases added).

In the first "WHEREAS" clause, the language "is the owner" and "embodied in various Agreements" suggests that Chic owned the patents that it exclusively licensed to Aspex through the agreement. If the parties had intended to include future-acquired patents, it more likely would have stated "is and/or will become the owner." Additionally, use of the past tense "LICENSED" in term "LICENSED PATENTS" even more strongly suggests that Chic had already acquired rights in these patents by its LICENSOR'S AGREEMENTS. Otherwise, the agreement with Aspex would have referred to the subject patents, either then-owned or future-acquired, generically as "PATENTS."

The second "WHEREAS" clause does not contradict our reading of the first by including the future-sounding phrase "immediately upon entering" and the past and future verb forms "vested" and "shall vest." Rather, this language shows that Chic intended to convey both the patents then-owned and any progeny of those patents, such as continuation, continuation-in-part, and divisional patents. It does not, contrary to Aspex's contention, reasonably suggest that Chic intended to license some patents upon execution and, at the same time, license others in the future, all of which qualify as licensed to Aspex under the terms of the Chic-Aspex Agreement.

6

Paragraph 1 of the Chic-Aspex Agreement, which recites the exact license grant from Chic to Aspex, dispels any doubt as to the scope of the agreement. Paragraph 1 states: "including all divisional, continuations, continuations-in-part, continuing patent applications . . . extensions or reissues of said licensed patents, and any patent that may issue thereon." This grant shows that the parties intended to license only those patents owned as of the execution date of the agreement and their progeny. Significantly, there is no mention of any future-acquired patents, distinct from the "licensed patents."

That Chic and Aspex entered into an exclusive license agreement covering patents "relating to magnetic eyewear for eyeglasses," a provision which certainly covers the '054 and '811 patents, does not change our interpretation of the Chic-Aspex Agreement. The specific grant provisions control the scope of the license agreement, not the general subject matter of the license. Accordingly, we hold that Chic did not grant an exclusive license to either of the asserted patents to Aspex.

Even if the Chic-Aspex Agreement covered future-acquired patents, Aspex still does not qualify as an exclusive licensee of the '811 patent. When the Chao-Chic Agreement was executed in July 1998, brothers Richard and David Chao co-owned the '811 patent. Nevertheless, only Richard Chao conveyed a license of the '811 patent to Chic; David Chao was not a party to the Chao-Chic Agreement.

> To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well. If the party has not received an express or implied promise of exclusivity under the patent, i.e., the right to exclude others from making, using, or selling the patented invention, the party has a "bare license," and has received

7

> only the patentee's promise that that party will not be sued for infringement.

Rite-Hite, 56 F.3d at 1552 (internal citations and quotations omitted). Because David Chao was entitled to practice the invention claimed in the '811 patent by virtue of his co-ownership of that patent, Richard Chao could not legally promise Chic that others would be excluded from practicing the '811 patent. Hence, although we have already held that Aspex did not obtain any rights to either the '054 patent or the '811 patent under the Chic-Aspex Agreement, we hold that Aspex could not have obtained exclusive rights under the '811 patent from Chic, because Chic was never properly granted exclusive rights to the '811 patent.

Alternatively, Aspex argues that it has an implied or oral license to the asserted patents based upon Contour's and Chic's conduct since the execution of the Chic-Aspex Agreement. We observe that Aspex did not raise this argument before the district court until its motion for reconsideration. Generally, we will not consider an argument that was raised for the first time in a motion for reconsideration. Lamle v. Mattel, Inc., 394 F.3d 1355, 1359 n.1 (Fed. Cir. 2005) (citing Intercontinental Travel Mktg. v. Fed. Deposit Ins. Corp., 45 F.3d 1278, 1286 (9th Cir. 1994) ("Raising an issue for the first time on motion to reconsider is not considered adequate preservation of the issue at a summary judgment stage.")). This "waiver rule" is, however, not jurisdictional but instead prudential. As such, we retain broad discretion to consider issues not timely raised before the district court. This court has enumerated select situations that might justify deviating from the "waiver rule," one of which is whether "the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice." L.E.A. Dynatech, Inc. v. Allina, 49 F.3d 1527, 1531 (Fed. Cir. 1995). Because

8

resolution of Aspex's oral or implied license argument is not a pure question of law, but likely involves factfinding, a function reserved exclusively to the trial court, we decline to consider it in this case. Nor is a miscarriage of justice shown.

Related to its standing challenge, Aspex contends that the district court erred in excluding the Ifergan Deposition under Fed. R. Evid. 602 for lack of personal knowledge. Because resolution of this issue does not impact the question of standing, we need not and decline to decide it. Even if it were germane, we conclude, after reviewing the Ifergan Deposition in detail, that Thierry Ifergan exhibits minimal, if any, knowledge about the negotiation and scope of the Chic-Aspex Agreement. In fact, his testimony reveals that the extent of his knowledge about the Chic-Aspex Agreement is limited to the mere text of the agreement. Such information, however, is equally ascertainable by anyone presented with the agreement to read.

Finally, Aspex asserts that the district court erred in denying its motion to add Chic as a necessary party to the suit under Fed. R. Civ. P. 19(a). We again need not and do not decide this issue. At the time Aspex filed its motion to add Chic, Aspex technically was no longer a party to the litigation. Hence, Aspex was not entitled to file any substantive motions, other than one requesting the district court to reconsider its grant of summary judgment for lack of standing.