NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1380, -1407

ASPEX EYEWEAR, INC.,
and CONTOUR OPTIK, INC.,

Plaintiffs-Appellants,

v.

ALTAIR EYEWEAR, INC.,

Defendant-Cross Appellant.

Michael A. Nicodema, Greenberg Traurig, LLP, of New York, New York, argued for plaintiffs-appellants. Of counsel on the brief were Matthew C. Wagner and Jeffrey A. Lindenbaum, Collen IP Intellectual Property Law, P.C., of Ossining, New York.

Brian G. Bodine, Merchant & Gould P.C., of Seattle, Washington, argued for defendant-cross appellant. With him on the brief was Kaustuv M. Das.

Richard M. Saccocio, Richard M. Saccocio, P.A., of Plantation, Florida, amicus curiae Designer's Eyewear Studio, Inc., et al.

Appealed from: United States District Court for the Southern District of New York

Judge Stephen C. Robinson

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1380, -1407

ASPEX EYEWEAR, INC.,
and CONTOUR OPTIK, INC.,

Plaintiffs-Appellants,

v.

ALTAIR EYEWEAR, INC.,

Defendant-Cross Appellant.

Appeal from United States District Court for the Southern District of New York in case no. 02-CV-6195, Judge Stephen C. Robinson

———————————————

DECIDED:  August 1, 2008

———————————————

Before MICHEL, Chief Judge, LINN, Circuit Judge, and ZAGEL,[*] District Judge.

MICHEL, Chief Judge.

Aspex Eyewear, Inc. ("Aspex") and Contour Optik, Inc. ("Contour") appeal from the district court's summary judgment of non-infringement.  Aspex Eyewear Inc. v. Altair Eyewear, Inc., 485 F. Supp. 2d 310 (S.D.N.Y. 2007).  We heard oral argument on June 4, 2008.  We reverse the district court's construction of "frame" and thus its summary judgment of non-infringement as to U.S. Patent No. 5,737,054 ("the '054 patent"), but

———————————————

[*]   Honorable James B. Zagel, United States District Court for the Northern District of Illinois, sitting by designation.

we affirm the district court's summary judgment of non-infringement as to U.S. Patent Nos. 6,012,811 ("the '811 patent") and 6,092,896 ("the '896 patent") and its determination that material issues of fact remain as to whether Aspex has standing to sue as an exclusive licensee. We remand for additional proceedings on infringement of the '054 patent in light of the corrected claim construction and on standing to sue on that patent.

## I.

Contour, a Taiwanese company, is the assignee of the patents-in-suit: the '054 patent entitled "Auxiliary Lenses for Eyeglasses," with Richard Chao as the named inventor; the '811 patent entitled "Eyeglass Frames with Magnets at Bridges for Attachment," a continuation-in-part of the application that issued as the '054 patent, with named inventors David and Richard Chao; and the '896 patent entitled "Eye-Wear with Magnets," a continuation of the application that issued as the '811 patent with named inventors David and Richard Chao. The patents-in-suit claim eyeglasses with auxiliary lenses (e.g., sunglasses) that attach to the primary glasses using magnets. Before the assignment to Contour, Richard Chao granted an exclusive license to Chic Optic, Inc. ("Chic"), a Canadian company. Aspex, a Delaware corporation, alleges that it received an exclusive license to the patents-in-suit from Chic under an oral or implied agreement. Both Chic and Aspex are owned by the Ifergan Trust.

Altair Eyewear, Inc. ("Altair") is a California company that distributes eyewear; some of the eyeglasses that Altair distributes include auxiliary sunglasses that attach to the primary glasses with magnets. In Altair's accused products (Diamontite Magnetics, Joseph Abboud, and Sunlites), some of the glasses have rims around the primary

2

lenses, but all of the sunglasses (which attach to the primary glasses) are rimless. In rimless glasses, holes are drilled in the lenses, and the bridge and earpieces are attached to the lenses with pins.

In August 2002, Aspex and Contour[1] sued Altair in the Southern District of New York alleging that Altair infringed certain claims of the patents-in-suit by selling glasses with auxiliary sunglasses that attach to the primary glasses with magnets.[2] In August 2004, Altair moved for partial summary judgment that Aspex lacked standing, and in March 2005, the district court denied that motion. At the district court, Aspex argued that it had standing based on two sources of patent rights: (1) a written agreement between Chic and Aspex and (2) oral and implied agreements between Contour, Chic, and Aspex. The district court held that the Chic-Aspex agreement was insufficient to confer standing because it was executed before the patents-in-suit issued, and the agreement referred only to patents already in existence. But the district court concluded that there was "without doubt, more than enough evidence on which a reasonable jury could believe that there was an oral and/or implied exclusive license between Chic and Aspex." Thus, the district court denied Altair's motion for partial summary judgment.

Following briefing on claim construction by the parties, the district court held a Markman hearing on July 28, 2005. In September 2005, the district court issued an opinion construing various claim terms in the patents-in-suit.

Claim 1 of the '054 patent recites:

1.    An eyeglass device comprising:

---

[1]    Aspex and Contour are referred to collectively as Aspex, except in the discussion of standing in which references to Aspex are to Aspex alone.
[2]    Aspex also alleged that Altair infringed another patent, but those allegations were dropped when Aspex filed an amended complaint.

3

2007-1380, -1407

a primary spectacle <u>frame</u> for supporting primary lenses therein, said primary spectacle <u>frame</u> including a middle bridge portion,

a first magnetic member secured in said middle bridge portion of said primary spectacle <u>frame</u>,

an auxiliary spectacle <u>frame</u> for supporting auxiliary lenses therein, said auxiliary spectacle <u>frame</u> including a middle bridge portion having a projection extended therefrom for extending over and for engaging with said middle bridge portion of said primary spectacle <u>frame</u>, and

a second magnetic member secured to said projection of said auxiliary spectacle <u>frame</u> for engaging with said first magnetic member of said primary spectacle <u>frame</u> and for allowing said auxiliary spectacle frame to be attached to said primary spectacle <u>frame</u> with only one hand by a user.

'054 patent, col.2 l.64 – col.3 l.14 (emphases added). The district court determined that "frame" in the claims of the '054 patent "is an eyeglass device that includes, at least, a bridge and rims." The court reached this construction based primarily on the language of the claims and specification. The court stated:

Because the claim discloses a frame that supports lenses 'therein,' the frame must be capable of supporting the lenses <u>in</u> the frame. In addition, the claim language requires that the frame 'includ[e]' a middle bridge portion, which indicates that the frame must also have other components, i.e. rims.

The court specifically noted that it relied solely on the intrinsic evidence and did not rely on inventor testimony, expert testimony, and defendant's marketing materials which the parties had submitted in support of their claim constructions.

Claim 1 of the '811 patent recites:

1.     An eyeglass device comprising:
a first frame including
<u>two retaining mechanisms for supporting a pair of lenses, and defining a frontal plane</u>,
a bridge connecting the two retaining mechanisms and holding the two retaining mechanisms together, and
a first magnetic member at the bridge for magnetically coupling to another magnetic member at the bridge of a second frame;
such that when coupled,
the two frames are attached together,

4

> due to the locations of the magnetic members, one of the frames is restricted from moving downwards relative to the other frame, and
>
> the two magnetic members are coupled at a surface that is not parallel to the frontal phase.

'811 patent, col.9 ll.16-31 (emphasis added).

The district court concluded that the claim limitation "two retaining mechanisms for supporting a pair of lenses, and defining a frontal plane" was a means-plus-function limitation under 35 U.S.C. § 112, ¶ 6. Because rims were the only structure disclosed in the specification, the district court limited the scope of the limitation to "a structure that keeps the lenses in place using rims."

Following claim construction, the parties cross-moved for summary judgment on infringement, Altair arguing that it did not infringe and Aspex arguing that Altair infringed under the doctrine of equivalents. In April 2007, the district court granted summary judgment of non-infringement. It was undisputed that while some of the accused glasses had rims around the primary lenses, none of the accused products had rims around the sunglass lenses. Thus, the district court concluded that none of the accused products literally infringed the '054 patent. The district court also concluded that the accused products could not infringe the '054 patent under the doctrine of equivalents because the rimless glasses supported the lenses in a different way (rims encircle the lenses, whereas according to the district court, the pins in rimless glasses do not hold the lenses "therein"). Next, the district court examined infringement as to the asserted claims of the '811 and '896 patents. Since the district court had determined that the "retaining mechanism" limitation was a means-plus-function limitation and that the only structure disclosed in the specification was rims, the court evaluated whether the rimless glasses of the accused product used a retaining mechanism equivalent to rims.

5

2007-1380, -1407

The court concluded that the pins used in a rimless configuration were not equivalent to rims because the structure differed substantially. Thus, the court granted summary judgment of non-infringement as to the '811 and '896 patents.

On April 13, 2007, the district court entered judgment and closed the case. On May 11, 2007, the district court amended its judgment to dismiss Altair's counterclaims without prejudice. On May 15, 2007, Aspex and Contour filed their notice of appeal, and on June 8, 2007, Altair filed its notice of cross-appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

**II.**

We review a district court's grant of summary judgment de novo. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). At summary judgment, all ambiguous facts and inferences must be construed in the light most favorable to the non-movant. Id. Summary judgment is only appropriate if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Id.

A.    Claim Construction

Claim construction is a question of law reviewed de novo. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454-56 (Fed. Cir. 1998) (en banc). We determine the ordinary and customary meaning of undefined claim terms as understood by a person of ordinary skill in the art at the time of the invention, using the methodology in Phillips v. AWH Corp., 415 F.3d 1303, 1312-19 (Fed. Cir. 2005) (en banc).

6

1.    *'054 Patent: "frame"*[3]

Claim 1 of the '054 patent recites "a primary spectacle <u>frame</u> for supporting primary lenses <u>therein</u>, said primary spectacle frame <u>including</u> a middle bridge portion" and "an auxiliary spectacle <u>frame</u> for supporting auxiliary lenses <u>therein</u>, said auxiliary spectacle frame <u>including</u> a middle bridge portion . . ." '054 patent, col.2 ll.65-67, col.3 ll.3-7 (emphases added). The district court concluded that a "frame" in the claims of the '054 patent "is an eyeglass device that includes, at least, a bridge and rims." On appeal, Aspex argues that the district court erred in limiting a "frame" to one with rims.

In reaching its construction, the district court relied on a linguistic analysis of the claim language, finding that since the frames must support the lenses "therein," the lenses must be supported "in" the frame and finding that since claim 1 requires that the frame "include[]" a middle bridge portion, it must include other components. We disagree. First, "therein" does not limit the "frame" to one that has rims. As noted in the many dictionaries in the record, "therein" means "in that place." Altair argues that the frame in claim 1 must support the lenses "in" the frame, but that structures without rims "are capable, at most, of supporting lenses <u>at</u> that place or securing lenses <u>to</u> various components." Appellee's Br. at 40 (emphasis in original). But such a hyper-technical analysis of prepositions is unnecessary. For a glasses frame to support the lenses "therein," the frames must hold the lenses in place. Such a view is supported by other

---

[3]    In its infringement analysis, the district court concluded that the accused products did not infringe the '054 patent because none of the accused sunglasses have rims, and that none of the patents-in-suit infringed under the doctrine of equivalents because rims were not equivalent to glasses that use only pins to hold the lenses in place. On appeal, Aspex argues that the district court erred in construing the claim limitations "not parallel to the frontal plane" and "u-shaped structure having two arms." The district court did not rely on its construction of these terms in evaluating infringement, and thus we decline to reach them in this appeal.

7

dictionaries in the record which include as definitions of frames: "the framework for a pair of glasses" and "the constituent of a pair of glasses other than the lenses." J.A. at 1281, 1292.

Further, the use of "including" in claim 1 does not support limiting "frame" to one with rims. "Including" is generally an open-ended term that does not preclude additional elements, but "including" does not require additional, unspecified elements as the district court found.

Moreover, the fact that the claim recites a middle bridge portion does not necessarily require the presence of rims. The "portion" recited in claim 1 need be no more than that part of the middle bridge in which a first magnetic member is secured in the primary frame and from which the projection extends in the auxiliary frame. The use of the term "portion" does not itself require that the frame contain structure in addition to the middle bridge. Thus, nothing in the claim language limits a "frame" to only one with rims.

Turning to the specification, the disclosure of the '054 patent is decidedly short and merely repeats the same language on which the district court relied ("therein" and "including"). The written description never mentions or describes rims, although rims are illustrated in the figures. And it makes clear that the precise configuration of the components of the glasses could be modified and still be within the scope of the claims. '054 patent, col.2 ll.56-62. Additionally, the stated objective of the invention is "to provide auxiliary lenses which may be easily engaged on the primary spectacle frame." Id. at col.1 ll.28-30. This objective is accomplished by the mode of attachment (magnetic members in the bridge portion of the glasses) and has nothing to do with

8

whether or not the frames include rims.  Thus, the specification does not support the narrow interpretation requiring that a "frame" be limited to one with rims.

The district court concluded that the accused products could not infringe either literally or under the doctrine of equivalents because the accused sunglasses are rimless.  Because we conclude that the claims of the '054 patent do not require rims, we reverse the district court's summary judgment of non-infringement as to the '054 patent and remand for further proceedings consistent with our revised claim construction.

2.    *'811 and '896 patents: "retaining mechanisms"*

Claim 1 of the '811 patent recites "two retaining mechanisms for supporting a pair of lenses, and defining a frontal plane."  The district court held that this limitation was a means-plus-function limitation under Section 112 ¶ 6.  On appeal, Aspex challenges this conclusion.

When a claim limitation does not recite a "means," there is a rebuttable presumption that it is not a means-plus-function limitation.  E.g., DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1023 (Fed. Cir. 2006). The presumption can be overcome, however, if "the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1369 (Fed. Cir. 2002). "To help determine whether a claim term recites sufficient structure, we examine whether it has an understood meaning in the art."  Id.  We have also held that a claim term need not recite specific structure; instead, "it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their

9

function." Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1359-60 (Fed. Cir. 2004).

On appeal, Aspex argues that the claim limitations that require the "retaining mechanisms" to "define a frontal plane" and recite "a bridge connecting the two retaining mechanisms and holding the two retaining mechanisms together" establish that the "retaining mechanisms" are "physical structures." Appellant's Br. at 27. But the question is not whether "retaining mechanisms" are physical structures but whether they are sufficiently definite structures.

In Massachusetts Institute of Technology & Electronics for Imaging, Inc. v. Abacus Software, 462 F.3d 1344 (Fed. Cir. 2006), this court affirmed the district court's determination that "colorant selection mechanism" was a means-plus-function limitation. We stated that "[t]he generic terms 'mechanism,' 'means,' 'element,' and 'device' typically do not connote sufficiently definite structure." Id. at 1354. Thus, we noted that "[t]he term 'mechanism' standing alone connotes no more structure than the term 'means.'" Id. We concluded that "colorant selection" had no generally understood meaning in the art that would connote sufficiently definite structure. Id.

On the other hand, in Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580 (Fed. Cir. 1996), this court reversed the district court's holding that the claim limitation "detent mechanism" was a means-plus-function limitation. We stated that "'detent' denotes a type of device with a generally understood meaning in the mechanical arts, even though the definitions are expressed in functional terms." Id. at 1583 (noting that dictionaries defined "detent," among other ways, as a part of a mechanism that locks or unlocks a movement).

10

2007-1380, -1407

This case is more analogous to MIT than Greenberg. Here, "mechanism" is a generic term, and its modifier, "retaining," is also quite broad, meaning "to hold back, keep, restrain." E.g., Webster's Ninth New Collegiate Dictionary 1006 (1990) (defining "retain"). Altair's expert Dr. Leck stated in his expert report that "'retaining mechanism' has no common meaning in the eyeglass industry," and that he had no "mental picture of a specific structure when [he heard] the term." When David Chao, one of the inventors, was asked whether there was "a commonly recognized structure in the industry for a retaining mechanism," he testified only that there were multiple types of retaining mechanisms that could retain lenses. Thus, there is no indication in the record that "retaining mechanism" connotes definite structure to a person of ordinary skill in the art. We affirm the district court's holding that "retaining mechanism" is a means-plus-function limitation. Because it is undisputed that the only structure disclosed in the specification for performing the recited functions (i.e., supporting the lenses and defining a frontal plane) are rims, the district court correctly construed this claim limitation as "a structure that keeps the lenses in place using rims."

Aspex argues that even if the district court correctly construed "retaining mechanism," it erred in concluding that Altair's rimless configuration was not equivalent to rims. It is undisputed that the sunglasses in the accused products are rimless; instead of rims, holes are drilled in the lenses and pins attach the lenses to the bridge.

The district court stated that the function of the "retaining mechanisms" in the claims was to support the lenses and define a frontal plane, but held that even if the pins in the accused products perform this function, the structure of the accused products "differs substantially." In particular, rims hold the lenses in place by encircling

11

them whereas the pins in a rimless configuration are drilled through the lenses. Based on this, the district court concluded that the way in which the pins in the accused products accomplish the function is different.

Aspex argues that it presented sufficient evidence to establish a disputed issue of material fact as to equivalency. It points to the declaration of David Chao, one of the inventors, who declared that "rims are interchangeable with studs, pins, or screws" and that both pins and rims retain the lenses and attach them to the bridge and/or "end piece." J.A. at 2939. Aspex also points to Altair's marketing materials that refer to rimless products as having frames.

We conclude that the evidence presented by Aspex was insufficient to create a disputed issue of material fact as to equivalency. We agree with the district court that pins retain the lenses in a substantially different way than rims. Moreover, David Chao's testimony on which Aspex relies is conclusory. Thus, we affirm the district court's conclusion that the accused products do not infringe the asserted claims of the '811 and '896 patents because they do not use "retaining mechanisms" (i.e., rims or their equivalents).

B.    Standing

Altair cross-appeals solely on the issue of whether Aspex has standing. Whether a party has standing to sue is a question of law that we review de novo. Additionally, standing is jurisdictional and cannot be waived. See Mentor H/S, Inc. v. Med. Device Alliance, Inc., 240 F.3d 1016, 1018-19 (Fed. Cir. 2001) (per curiam). Because the district court denied summary judgment as to standing, however, we review that

12

determination for abuse of discretion. See, e.g., Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1372 (Fed. Cir. 2005).

This court has held that plaintiffs in patent suits fall into three categories for standing purposes: "those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit." Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007). In the first category (i.e., those who can sue in their own name alone) are those plaintiffs that hold all legal rights to the patent, including assignees and those to whom "all substantial rights to the patent" have been transferred. Id. at 1340. Exclusive licensees who do not receive all substantial rights fall into the second category and must join the patent owner as co-plaintiff to satisfy prudential concerns (i.e., to avoid the possibility that the accused infringer could later be sued by the patentee also). Id. Finally, the third category (those who cannot be parties at all) includes those who lack exclusionary rights, i.e., those licensees who are authorized to make, use, and sell the patented product but who have no right to prevent others from also doing so. Id. at 1341.

In this case, Aspex argues that it is in the second category, as an exclusive licensee, whereas Altair argues that Aspex is in the third category as a "bare" licensee. The district court concluded that there was sufficient evidence of an oral or implied exclusive license to preclude summary judgment on the issue of standing.[4]

---

[4] In the district court, Aspex argued that a 1998 written license agreement between Chic and Aspex granted Aspex an exclusive license. The district court rejected this argument. Shortly thereafter, in Aspex Eyewear, Inc. v. E'Lite Optik, Inc., 127 Fed. Appx. 493, 494 (Fed. Cir. 2005), this court reached the same conclusion affirming a different district court's summary judgment for lack of standing because the

13

In its cross-appeal, Altair argues: (1) exclusive licenses sufficient to grant standing to the licensee must be in writing; and (2) even if an oral exclusive license can confer standing, the evidence here was insufficient to show that Aspex is an exclusive licensee.[5]

1.      *Writing Requirement for Exclusive Licenses*

35 U.S.C. § 261 states in relevant part:

> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

(emphasis added). We have concluded that both assignments and "virtual assignments" (i.e., exclusive license agreements that convey all substantial rights) must be in writing for a party to have standing to sue in its own name. Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998). This court has also concluded that an exclusive license need not be in writing for the exclusive licensee to have standing to sue with the patentee as a co-plaintiff. Waymark Corp. v. Porta Sys. Corp., 334 F.3d 1358, 1364 (Fed. Cir. 2003); see also Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc) ("To be an exclusive licensee for standing

---

written license agreement did not grant Aspex an exclusive license as to the '054 and '811 patents. In that case, we declined to reach Aspex's argument that it received an exclusive license through an implied or oral license because Aspex had not properly raised that argument below. Id. at 497. In this appeal, Aspex no longer argues that the written license agreement granted it an exclusive license. Thus, we focus only on whether Aspex has standing based on an oral or implied license.

[5]    Altair also argues that Chic never received an exclusive license to the '811 patent from Contour and thus could not have granted Aspex an exclusive license. Because we affirm the district court's summary judgment of non-infringement as to the '811 and '896 patents, we need not determine whether the district court was correct in denying Altair's motion for summary judgment that Aspex lacked standing to pursue infringement claims as to those patents.

14

2007-1380, -1407

purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's <u>express or implied promise</u> that others shall be excluded from practicing the invention within that territory as well.") (emphasis added); <u>Weinar v. Rollform, Inc.</u>, 744 F.2d 797, 806-07 (Fed. Cir. 1984). While Altair is correct that none of these cases expressly analyzes the "in like manner" language in Section 261, we are bound to follow our precedent, and thus we hold that an exclusive license need not be in writing for the licensee to have standing if the patentee or assignee is also joined, as Contour was here.

     2.    *Aspex's Evidence of an Oral or Implied Exclusive License*

The district court denied summary judgment finding that Aspex had raised at least a genuinely disputed issue of material fact that it had an implied or oral exclusive license. The court based its conclusion on the following findings:

- Chic and Aspex are both owned by members of the same family and have a close business relationship.
- Aspex has operated as an exclusive licensee, distributing products made pursuant to the patents-in-suit and seeking to enforce its rights under the patents.
- Thierry Ifergan, a member of the family that owns both Chic and Aspex, testified that oral and implied agreements exist that grant Aspex an exclusive license to the patents-in-suit.

We agree that this evidence, along with other evidence in the record, is sufficient to establish a genuinely disputed issue of material fact as to whether Aspex had an oral or implied exclusive license. In addition to the above, Nonu Ifergan, another member of the family that owned both Chic and Aspex, testified that both companies believed the written license agreement conferred an exclusive license to the patents-in-suit and operated consistent with that understanding. Altair's arguments that the evidence was insufficient simply call into question the credibility of the Ifergans' testimony; since the

15

2007-1380, -1407

district court simply denied summary judgment, however, credibility is not before us, only whether there was a disputed issue of material fact. Therefore, we hold that the district court did not abuse its discretion in denying summary judgment for lack of standing.

### III.

For the foregoing reasons, we affirm the district court's summary judgment of non-infringement as to the '811 and '896 patents. We also affirm the district court's denial of summary judgment for lack of standing. But we reverse the district court's summary judgment of non-infringement as to the '054 patent because we conclude that a "frame" as that term is used in the '054 patent is not limited to one with rims. We remand for further proceedings as to infringement of the claims of that patent consistent with our revised claim construction as well as regarding standing to enforce that patent.

2007-1380, -1407