NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LOCHNER TECHNOLOGIES, LLC,**
*Plaintiff-Appellant,*

v.

**VIZIO, INC.,**
*Defendant-Appellee,*

AND

**TOSHIBA AMERICA INFORMATION SYSTEMS, INC. (formerly known as Toshiba America, Inc.),**
*Defendant-Appellee.*

---

2013-1551

---

Appeal from the United States District Court for the Central District of California in No. 12-CV-1659, Senior Judge Mariana R. Pfaelzer.

---

Decided: June 27, 2014

---

BRIAN D. LEDAHL, Russ August & Kabat, of Los Angeles, California, argued for plaintiff-appellant. With him on the brief were MARC A. FENSTER and FREDRICKA UNG.

ADRIAN M. PRUETZ, Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP, of Los Angeles, California, argued for defendant-appellee Vizio, Inc. With her on the brief was CHARLES C. KOOLE. Of counsel on the brief was STEVEN R. HANSEN, Lee Tran & Liang LLP, of Los Angeles, California.

DORIS JOHNSON HINES, Finnegan Henderson Farabow Garrett and Dunner LLP, of Washington, DC, argued for defendant-appellee Toshiba America Information Systems, Inc. With her on the brief were J. MICHAEL JAKES and JASON E. STACH.

---

Before O'MALLEY, TARANTO, and CHEN, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Lochner Technologies, LLC filed suit against Vizio, Inc. and Toshiba America Information Systems, Inc. (collectively, "Defendants") for infringement of claims 1-10 and 12 of U.S. Patent No. 7,035,598 ("the '598 Patent"), which is entitled "Modular Computer System." Defendants filed counterclaims seeking a declaration that the '598 Patent is invalid and not infringed. Defendants subsequently filed a motion for summary judgment of invalidity under 35 U.S.C. § 112.

Lochner appeals from the district court's final judgment that the asserted claims are invalid for: (1) lack of written description under 35 U.S.C. § 112, ¶ 1; and (2) failure to claim what the applicants regard as their invention under 35 U.S.C. § 112, ¶ 2. We conclude that the district court erred in its claim construction analysis. Because its written description and "regards as invention" analyses were predicated on this flawed analysis, we vacate the district court's judgment of invalidity and remand for further proceedings.

BACKGROUND

A.  The '598 Patent

Lochner Technologies, LLC ("Lochner") is owned and operated by Scott J. Lochner who is the principal inventor and the exclusive owner by assignment of the '598 Patent. The '598 Patent claims priority through a series of divisional and continuation applications to U.S. Patent Application No. 07/642,831, which was filed on January 18, 1991. After a lengthy prosecution history, the '598 Patent issued on April 25, 2006.

The patent explains that, at the time the application was filed, there was no system which would allow a computer user "to move easily and quickly from one location to another while enjoying all of the operating capabilities of a full-sized microcomputer." '598 Patent col. 1 ll. 41-44. Accordingly, Lochner and his co-inventor sought to create a portable way to access a personal computer and "to allow the user to change locations, at least over a limited area, while exerting full control over the computer." *Id.* at col. 1 ll. 49-54.

Generally speaking, the '598 Patent is directed to a wireless two-part computer system, including: (1) a stationary base storage and control unit; and (2) a portable input-output unit. These structurally separate units are depicted in Figure 1:

Base Storage and Control System

Portable Input-Output System

FIG. 1 (annotated)

While the storage and control unit is similar to a "conventional basic computer system" which includes a "CPU with microprocessor," the input-output unit is limited to achieve portability. *Id.* at col. 2 ll. 22-25. The written description explains that "one unit of the computer need only include an input device, typically a keyboard, and an output device, typically a display" while "the central processing unit and any desired peripherals . . . form parts of another unit which can be allowed to remain stationary." *Id.* at col. 2 ll. 5-12. It further states that "the input-output unit *differs from known devices* in that in its preferred form of construction, it *consists only of* a keyboard and a display device, along with an associated transceiver unit." *Id.* at col. 2 ll. 29-32 (emphases added).

Independent Claim 1, which the parties agree is representative, recites a base system including four components: (1) a processor; (2) a non-volatile memory;

(3) a display element; and (4) a wireless transceiver. Relevant to this appeal, Claim 1 also recites a "*portable input-output system including*": (1) a wireless transceiver; (2) a user interface; and (3) a display arrangement. *Id*. at col. 6 ll. 20-38 (emphasis added).

The written description repeatedly emphasizes that the portability of the input-output unit is achieved by limiting the unit essentially to the three components listed in Claim 1:

- "Since one unit of the computer *need only include* an input device . . . an output device. . . [and] a transceiver unit . . . this unit can be relatively light in weight and hence portable." '598 Patent col. 2 ll. 5-8 (emphasis added).

- "[The input-output system] is *composed essentially of* three components, a keyboard, a. . . display device and a wireless transceiver device." *Id*. at col. 3 ll. 7-9 (emphasis added).

- "Because of the *limited number of components* forming [the input-output unit], this can be conveniently constructed to have the general form of a briefcase, including a carrying handle." *Id*. at col. 3 ll. 20-22 (emphasis added).

Consistent with this language in the written description, Lochner made several limiting statements during the course of the patent's lengthy prosecution history. For example, to overcome certain prior art, Lochner expressly excluded features of a full-service computer, such as non-volatile data storage and the ability to execute application programs:

(1) Sandstedt totally fails to teach or suggest the basic concept claimed by Applicant: a two-part computer system comprising: (1) a base storage and control unit that includes all necessary com-

ponents for computing; and (2) a simple, lightweight, and inexpensive remote input/output unit essentially dedicated to only I/O functions (i.e., not for non-volatile data storage or execution of application programs). As shown and described in Fig. 4 and col. 4, line 16 over to col. 5, line 48 of Sandstedt, he teaches a portable terminal 12 that is essentially a self-contained computer having a microprocessor, RAM, and ROM.

Decl. of Charles C. Koole in Support of Defs.' Opening Claim Construction Br. at Exhibit M, *Lochner Techs., LLC v. Apple Inc.*, No. 8:12-cv-1659 (C.D. Cal. Jan. 25, 2013), ECF 310-14 (July 26, 1993 Amendment after Final Rejection filed in Application No. 07/642,831, to which the '598 Patent claims priority) (emphases in original).

Lochner subsequently explained that:

Applicants are not claiming a device that is a stand-alone processing system that can remotely communicate with a host computer. Rather, Applicants are claiming a system that includes a remote input/output unit for interacting with a base storage and control unit in which the remote unit is essentially used only for data input to the base unit and display of video information generated by the base unit and communicated in essentially real time from the base unit to the remote unit. Limiting the functions of Applicant's invention as claimed means that the invention can be implemented relatively inexpensively, since the remote unit does not need to be a stand-alone computer having communications capabilities, but only a relatively "dumb" terminal that relies upon the computing power of the base station.

*Id.* at ECF 310-3 (Exhibit B: August 31, 1994 Amendment filed in Application No. 08/120,649, to which the '598 Patent claims priority).

## B. Procedural History

In September 2011, Lochner filed suit against a number of Defendants—including Vizio and Toshiba—alleging infringement of claims 1-10 and 12 of the '598 Patent. The accused products are tablets that incorporate CPU and RAM, and have full processing capabilities. *See* Oral Argument at 15:27, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/all/lochner.html.

In their claim construction briefing, Defendants argued, among other things, that the court should construe the term "input-output system" to encompass only a "unit composed essentially of an input device, an output device, and a transceiver." Defs.' Opening Claim Construction Br., *Lochner Techs., LLC v. Apple Inc.*, No. 8:12-cv-1659 (C.D. Cal. Jan. 25, 2013), ECF 310 at 18. The district court conducted a *Markman* hearing on February 28, 2013. During that hearing, Lochner's counsel argued that the inventors:

> intended for the input/output system to simply include those three components. And it could include a processor, but not a processor that's a full-fledged processor that would execute the applications. It's a processor that could perform simply processing, as disclosed in the March 13, 1995, amendment where it says it could include a local processor to be used to control routing display and transmission of information. It could also include local storage, but not a significant amount of it.

Joint Appendix ("JA") 783.

The district court issued a partial claim construction order on April 23, 2013. Relevant to this appeal, the court construed the claimed "input-output system" to mean "a system primarily responsible for input and output tasks." *Lochner Techs., LLC v. Apple, Inc.*, No. 12-cv-1659, 2013

WL 8507730, at *6 (C.D. Cal. Apr. 23, 2013) ("*Partial Claim Construction Order*").  Although it acknowledged that the "only description of the input-output unit in the specification states that it is 'composed essentially of three components, a keyboard, a . . . display device, and a wireless transceiver device," the court nonetheless concluded that the claim was not limited to those three elements given its use of the open-ended term "including." *Id*.  The district court also construed the term "portable" as "lightweight and easy to carry, like a laptop." *Id*. at *8. The court concluded, therefore, that the phrase "portable input-output system"—as used in Claim 1—"requires an input-output system which is 'lightweight and easy to carry, like a laptop.'" *Id*. at *9.

After the district court issued its partial claim construction decision, it issued a separate order in which it *sua sponte* invited the parties to brief the enablement, written description, and "regards as invention" requirements of 35 U.S.C. § 112 (2006).[1]  Specifically, the court stated that:

> Due to the patentee's invocation of the transition term "including," the subsequently recited list of components (wireless transceiver, input interface, display arrangement) merely serves as a floor for claim scope; the claim scope has no ceiling whatsoever.  As such, the full scope of the claim expression "portable input-output system . . . including . . . wireless transceiver . . . [input] interface . . . and [a display] arrangement" has quite

---

[1]    The Leahy-Smith America Invents Act ("the AIA") amended section 112 by inserting subsection headings (a)-(f).  *See* Pub. L. No. 112-29, § 7(a)(1), 125 Stat. 284, 313 (2011).  No substantive changes were made that would have any relevance to this appeal.  For consistency, therefore, we use the prior designations.

> an expansive reach. It even reads on products whose input-output system(s) include(s) full-fledged microprocessors and non-volatile memory chips. Indeed, the claim element "input-output system" reads on any portable input-output system so long as it features the three listed components . . . no matter *what else* the input-output system includes.

Order Permitting Further Motions, *Lochner Techs., LLC v. Apple Inc.*, No. 8:12-cv-1659 (C.D. Cal. Apr. 24, 2013), ECF 333 at 1-2 (emphasis in original). Although the court recognized that the "spirit of the invention is rendering the input-output system 'portable' by limiting the type of components that go inside it," and cited various portions of the specification supporting that understanding, the court concluded that invocation of the term "including" gave the claims a broader scope. *Id*. at 3. The court also expressed concern "that the claims do not set forth what the applicants regard as their invention because they do not invoke the partially-closed claim term such as 'consisting essentially of.'" *Id*. at 5.

Pursuant to the district court's order, Defendants moved for summary judgment of invalidity on three grounds: (1) lack of written description under 35 U.S.C. § 115, ¶1; (2) lack of enablement under 35 U.S.C. § 112, ¶1; and (3) failure to claim what the applicants regard as their invention under 35 U.S.C. § 112, ¶2. Defendants argued that the applicants' own statements in the '598 Patent and the file history indicate that they were not in possession of, did not enable, and did not regard as their invention a portable, application-executing input-output system with a CPU, RAM, or non-volatile memory.[2]

---

[2] Defendants also argued that the asserted claims were invalid under both the written description and

In response, Lochner submitted expert declarations from Dr. Arthur Brody and Dr. Glenn Reinman. Both experts opined that one of skill in the art would understand that, although the inclusion of additional components—such as CPU, memory, and storage—are not essential to the invention as claimed, they are also not inconsistent with the claimed system.

On June 6, 2013, the district court granted Defendants' motion for summary judgment as to the written description and "regards as invention" requirements, but denied it as to enablement. Amended Order Granting-in-Part and Denying-in-Part Defs.' Motion for Summary Judgment of Invalidity, *Lochner Techs., LLC v. Apple Inc.*, No. 8:12-cv-1659 (C.D. Cal. June 6, 2013), ECF 353 ("*Summary Judgment Decision*"). The court found that the specification of the '598 Patent did not describe the full scope of the open-ended claims, i.e., a portable input-output system that includes non-volatile memory and microprocessors. It further found the claims invalid under the "regards as invention" requirement because the claimed input-output system covers the claimed elements and *any other* elements. Lochner timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

---

enablement requirements because the specification does not disclose or support the "display element" of the claimed "base storage and control system" or the "arrangement for providing a continuously-displayed full screen display" of the claimed "portable input-output system." The district court did not address these issues in its summary judgment decision, and we decline to do so for the first time on appeal.

DISCUSSION

Lochner maintains that the written description of the '598 Patent adequately describes and enables each of the three recited elements of the claimed portable input-out system: a wireless transceiver, a user interface, and a display arrangement. On appeal, Lochner contends that the district court "based its ruling on a novel, but incorrect, principle that the '598 patent specification must also describe unclaimed elements of potential embodiments of the claimed system." Appellant Br. 9. According to Lochner, the written description conveys to one of skill in the art that the portable input-output system could include other components beyond the recited claim elements, including a CPU, non-volatile memory, or RAM.[3]

In response, Defendants argue that the district court correctly found the asserted claims invalid for inadequate written description because the written description fails to provide support for the full scope of the claims. Defendants maintain that the patent "repeatedly, consistently, and exclusively describes the invention as achieving the portability of the input-output system by limiting its components to a wireless transceiver, a keyboard, and a monitor—and expressly excluding processors, RAM memory, and non-volatile storage." Appellees' Br. 20-21. During prosecution, moreover, the inventors repeatedly stated that the written description should be read in this limited way. Defendants also argue that the district court was correct in its conclusion that the '598 Patent claims

---

[3] Lochner also argues that the district court incorrectly applied the summary judgment standard by failing to draw inferences in its favor. Because we find that the district court erred in its claim construction analysis, we need not reach this alternative argument.

are invalid for failure to claim what the inventors regarded as their invention.[4]

Although "[c]ompliance with the written description requirement is a question of fact," it is "amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *Atl. Research Mktg. Sys. v. Troy*, 659 F.3d 1345, 1353 (Fed. Cir. 2011) (quoting *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008)). We review the district court's decision granting summary judgment of invalidity for lack of written description without deference. *Id.* Whether a claim recites the subject matter which the applicant "regards as his invention" is a question of law that we review de novo. *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000).

As explained below, because the district court's written description and "regards as invention" analyses were predicated on a flawed claim construction analysis, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

---

[4]     Defendants assert several alternative grounds for affirmance, all of which relate to the claimed "display element" and "arrangement for providing a continuously-displayed full screen display." Although the parties submitted their proposed claim constructions for "display element" and the display arrangement, the district court did not construe those terms in its partial claim construction decision, and we decline to do so for the first time on appeal. *See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1371 (Fed. Cir. 2005) ("This court's review of a district court's claim construction, albeit without deference, nonetheless is not an independent analysis in the first instance.").

## A. Written Description

The district court found the asserted claims of the '598 Patent invalid for lack of written description. Section 112 of Title 35 provides, in part, that the "specification shall contain a written description of the invention." 35 U.S.C. § 112, ¶ 1. "An applicant complies with the written description requirement 'by describing *the invention*, with all its claimed limitations.'" *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) (emphasis in original)). To satisfy the written description requirement, the specification must "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). The "level of detail required . . . varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Id.* We have recognized that the test for sufficiency "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id.*

"[T]he hallmark of written description is disclosure." *Id.* Accordingly, the patent "must describe an invention understandable to [a] skilled artisan and show that the inventor actually invented the invention claimed." *Id.* "'The purpose of the written description requirement is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" *Atl. Research*, 659 F.3d at 1354 (quoting *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1319 (Fed. Cir. 2011)).

It is well-established that "'claim construction is inherent in any written description analysis.'" *Id.* (quoting

*Katz*, 639 F.3d at 1319); *see also Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1336 (Fed. Cir. 2010) ("A district court must base its analysis of written description under § 112, P 1 on proper claim construction."). Claim construction is a question of law that this court reviews without deference. *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1276-77 (Fed. Cir. 2014) (en banc). To determine the scope and meaning of a claim, we look to the claim language, the written description, the prosecution history, and any relevant extrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-17 (Fed. Cir. 2005) (en banc). Although claim construction begins with the language of the claims themselves, the claims "must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc).

Here, the district court found that Claim 1 of the '598 Patent recites a portable input-output system "including" three components: (1) a wireless transceiver; (2) an input interface; and (3) a display arrangement. Summary Judgment Decision, *Lochner Techs., LLC v. Apple Inc.*, No. 8:12-cv-1659 (C.D. Cal. June 6, 2013), ECF 353 at 6. The district court interpreted the term "including" in Claim 1 to mean that the "reach of the claim scope is infinity once an accused product's input-output system features the recited components." *Partial Claim Construction Order*, 2013 WL 8507730, at *6. The court therefore construed the claimed "input-output system" to permit the addition of any components, even though it recognized that the specification "repeatedly attributes the portability (a claim limitation in and of itself) of the input-output device to the absence of components ordinarily found in a laptop." Summary Judgment Decision, *Lochner Techs, LLC v. Apple Inc.*, No. 8:12-cv-1659 (C.D. Cal. June 6, 2013), ECF 353 at 12. Because the open-ended "claims do not limit themselves to a 'limited num-

ber of components,'" the court found that the written description does not support the full scope of the claims. *Id.* at 14.

On appeal, Lochner takes issue with the district court's belief that use of an open-ended term "including" requires patentees to disclose the recited as well as unrecited elements that are present in the accused infringing products. According to Lochner: (1) there is no precedent requiring a patentee to disclose or enable unclaimed elements; and (2) the written description inquiry "focuses on a comparison between the specification and the invention referenced by the terms of the claim—not comparison between how the product was made as disclosed in the patent and future developments of this process that might alter or even improve how the same product is made," *Amgen Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313, 1331-32 (Fed. Cir. 2003). We agree.

The district court is correct that we have "consistently interpreted 'including' and 'comprising' to have the same meaning, namely, that the listed elements . . . are essential but other elements may be added." *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008). Accordingly, we have said that open ended claim terms can "embrace[] technology that may add features to devices otherwise within the claim definition." *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371-72 (Fed. Cir. 2005) ("The addition of elements not recited in the claim cannot defeat infringement").

Although "including" is generally an open-ended term that does not *preclude* additional elements, we have recognized that it does not *require* additional, unspecified elements. *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 F. App'x 697, 702 (Fed. Cir. 2008) ("'Including' is generally an open-ended term that does not preclude additional elements, but 'including' does not require additional, unspecified elements as the district court found."). In-

deed, this court has held that, to satisfy the written description requirement, "'an applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention.'" *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1365 (Fed. Cir. 2003) (quoting *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001)). And, as Lochner argues, we have held that "a patent claim is not necessarily invalid for lack of written description just because it is broader than the specific examples disclosed." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1371 (Fed. Cir. 2009).

After careful consideration, we find that the district court erred when it assumed that use of the term "including" somehow trumped consideration of the specification and prosecution history and displaced application of standard claim construction principles. In its post-claim construction order inviting the parties to brief several issues, the district court explained its belief that

> [o]rdinarily, where a claim term is ambiguous and can reasonably be construed in a way congruous with the described invention or in a way broader than the described invention, the Court can properly issue a limiting construction so as to abide by the mandate of construing claim terms in light of the specification. But where, as here, the patentee invokes an open-ended transition term, the Court cannot rewrite the claims.

*See Order Permitting Further Motions* at 3-4. To the contrary, it is well-established that claim terms must be construed in light of the entire patent, including the written description and prosecution history. Indeed, we have recognized that "the specification is always highly relevant to the claim construction analysis" and "is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Likewise, we have emphasized that

courts should "consult the patent's prosecution history, which, like the specification, provides evidence of how the PTO and the inventor understood the claimed invention." *Advanced Fiber Techs. Trust v. J&L Fiber Servs., Inc.*, 674 F.3d 1365, 1372 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1317). If a patentee "makes a clear and unambiguous disavowal of claim scope during prosecution, that disclaimer informs the claim construction analysis by 'narrow[ing] the ordinary meaning of the claim congruent with the scope of the surrender.'" *Id.* at 1372-73 (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003)).

Review of the district court's partial claim construction order reveals that it focused exclusively on the term "including" when arriving at its construction for "input-output system." In doing so, the court failed to properly consider the limiting language in the written description and the statements Lochner made over the course of the prosecution history, including his own characterization of the input-output unit as a "dumb terminal." In other words, the court gave controlling effect to the word "including" without reference to the claim language following it, the patent in which it appears, and the patent's prosecution history.

Because the court's written description analysis is predicated on a fundamentally flawed claim construction, we do not reach the merits of the parties' arguments. Instead, we vacate the court's invalidity decision and remand for further proceedings. On remand, the district court should reconsider its claim construction analysis. If a written description issue remains, the court should reconsider that issue in light of this court's precedent providing that a patentee cannot be required to disclose every possible embodiment, *see Cordis*, 339 F.3d at 1365; *Martek*, 579 F.3d at 1371.

## B. Regards as Invention

The district court also found the asserted claims of the '598 Patent invalid for failing to set forth what the applicants regard as their invention. By statute, the specification of every patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. We have recognized that the "regards as invention" requirement is distinct from the requirement that the claim be sufficiently clear to be definite. *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002). "Where it would be apparent to one of skill in the art, based on the specification, that the invention set forth in a claim is not what the patentee regarded as his invention, we must hold that claim invalid under § 112, paragraph 2." *Id.* at 1349; *see Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 739 (Fed. Cir. 2014) (distinguishing *Allen* because there, "the patentee agreed that the claim language did not match what he regarded as his invention, as the intrinsic record unambiguously showed").

Given its conclusion that "the word 'including' is not amenable to narrowing," the district court found that the "full scope of the claim term 'input-output system' covers the claimed elements *and any other elements* that could enter the input-output system." Summary Judgment Decision, *Lochner Techs, LLC v. Apple Inc.*, No. 8:12-cv-1659 (C.D. Cal. June 6, 2013), ECF 353 at 16 (emphasis in original). And, because use of "the term 'portable' does not cabin the full scope of the overall claim so as to bring it into compliance with what the specification establishes the patentee regarded as the invention," the court found the asserted claims invalid under the "regards as invention" requirement. *Id.*

Lochner argues that the district court erred in its analysis because: (1) it applied the wrong standard by

conflating the written description requirement of Section 112 paragraph 1 with the requirements of paragraph 2; (2) *Allen Engineering* is distinguishable on its facts; and (3) the specification of the '598 Patent expressly discloses that the input-output system can include additional components, such as a graphics card.

Because the district court's analysis stems from its erroneous approach to claim construction, we vacate its decision finding the asserted claims invalid under the "regards as invention" requirement. The court should reconsider its "regards as invention" analysis after construing the claimed "portable input-output system" consistent with the principles discussed herein.

CONCLUSION

For the foregoing reasons, we vacate: (1) the district court's order granting-in-part Defendants' motion for summary judgment of invalidity under 35 U.S.C. § 112; and (2) the district court's judgment of invalidity for lack of written description and for failure to claim what the applicants regards as their invention. We remand for further proceedings consistent with this opinion, including new claim construction.

**VACATED AND REMANDED**